957 P.2d 712 (1998)
135 Wash.2d 441
STATE of Washington, Respondent,
v.
Boyd Allen FOSTER, Petitioner.
No. 64217-6.
Supreme Court of Washington, En Banc.
June 11, 1998.
*714 Lenell Rae Nussbaum, Seattle, for petitioner.
Norm Maleng, King County Prosecutor, Amy Freedheim, Michele Hauptman, Theresa Fricke, Deputy County Prosecutors, for respondent.
*713 GUY, Justice.
The issue in this appeal is whether RCW 9A.44.150, which, in limited circumstances, permits a child witness to testify via one way closed-circuit television rather than in the physical presence of the accused, violates the guarantees of the state or federal confrontation clause.
We hold that the right of an accused to confront witnesses "face to face," as guaranteed by our state constitution, like the right guaranteed by the Sixth Amendment to the United States Constitution, is not absolute. The right may be limited, in rare circumstances, when necessary to further an important state interest and, then, only if the procedures used for taking the evidence adequately ensure the reliability of that evidence.
The purpose of RCW 9A.44.150 and the procedures set forth in the statute meet this standard. Accordingly, we hold the statute withstands constitutional scrutiny. We also hold that it was properly applied in this case and we affirm the conviction.

FACTS
Defendant Boyd (Spud) Foster was convicted by a jury of first degree child molestation.[1] The victim was a six-year-old girl.
The trial court held two pretrial hearings to determine whether the child was competent to testify. The first was held in the courtroom, with the Defendant present. The second was held by closed-circuit television. In the second hearing, the child testified from the judge's chambers and the testimony was broadcast live into the courtroom.
In the initial hearing, the child testified that she had been to Kid's Court[2] and that she understood the difference between telling the truth and telling a lie. However, she was unable to promise that she would tell the truth about the incident involving Defendant Foster. Her responses to repeated questions with respect to whether she would tell *715 the truth about what happened were "I might" and "I don't know." Report of Proceedings at 76-80. On redirect examination, the prosecutor asked the child the reason she was not able to promise to tell the truth. The testimony was as follows:
Q. If I ask you what happened with Spud [Defendant's nickname], will you tell me the truth or will you tell me a lie?
A. I don't know.
Q. If I tell you that you have to tell me the truth, will you tell me the truth?
A. I don't know.
Q. Is it because of the courtroom?
A. Yes.
Q. Are you feeling shy because Spud is here? ... If you couldn't see Spud, would you be able to tell what happened?
A. Yes.
Q. If you couldn't see him, would you be able to tell me the truth about what happened?
A. Yes.
Q. Is it because you can see him that you feel that you can't tell the truth?
A. Yes.
Q. You don't want to say anything about what happened, you don't want to talk about it, because you see him?
A. Yes.
Q. Are you afraid that something might happen if you tell the truth?
A. No.
Q. It's just because you see him, that makes you scared?
A. Yes.
Report of Proceedings at 80-81.
The trial court ruled that the child's statements to her mother and others about the alleged molestation were reliable and admissible hearsay statements, under RCW 9A.44.120, if corroborated or if the child was competent and chose to talk. However, the court determined that the child was not competent because she could not promise to tell the truth. Following the hearing, the child was unusually subdued. She repeatedly said, "I didn't know he was going to be there." Report of Proceedings at 249.
Two days later the trial court held a second competency hearing. This second hearing was conducted via closed-circuit television. The child victim, the victim's advocate, the prosecutor, defense counsel, the court reporter, and the technician operating the equipment were in the judge's chambers. The judge, Defendant, bailiff and court clerk were in the courtroom. There was an open microphone so that the judge could communicate with the attorneys and there was a two-way system for private communication between the Defendant and his counsel. The persons in the courtroom were able to view the video screen, and it showed an accurate reproduction of the judge's chambers.
During the second hearing the child answered questions more easily. She testified that she knew the difference between the truth and a lie and testified about what she had learned when she attended Kid's Court. Her testimony, in response to questions posed by the prosecutor, included the following:
Q. What was the first rule of Kids' Court?
A. Don't lie.
Q. Was there a second rule?
A. If you don't know something, you say you don't know.
Q. Will you promise to tell the truth today?
A. Yes.
Q. What will happen if you don't know, what will you do?
A. Say I don't know.
Q. Will you promise to tell the truth about what happened with you and Spud?
A. Yes.
Q. ... Do you know Spud?
A. Yeah.
....
Q. You promise to tell the truth about everything that happened with Spud?
A. Yes.
Report of Proceedings at 241-42.
Testimony continued, in response to questions by defense counsel, as follows:
*716 Q. ... [D]o you remember when you were in the courtroom with us?
A. Yeah.
Q. Do you remember you told the judge that you might tell her the truth?
A. Yeah.
....
Q. Are you still going to tell her the truth, or maybe tell her the truth?
A. I will.
....
Q. You will tell the judge the truth?
(Witness nods head.)
Q. ... [A]re you afraid of Spud?
(Witness nods head.)
....
Q. Has Spud ever threatened you?
(Witness shakes head.)
Report of Proceedings at 242-43.
At the conclusion of the hearing, the child spontaneously asked, "Where is Spud?" The prosecutor told her that the Defendant was in another room. The child then asked if he could hear her, and the prosecutor said, "Yes, he can hear you, you just can't see him." The child responded, "I don't care if he can hear me, I just don't want to see him." Report of Proceedings at 244.
The trial court concluded, following the second hearing, that the child was a competent witness. The court ruled:
I found a great deal of difference between the child that testified the other day and the child who testified today. The child today was clearly competent. I would have found her competent at an earlier time had she promised to tell the truth. Clearly something was definitely bothering her when she testified at the first competency hearing. There was a totally different child that I observed today. What I observed today was an outgoing child. The child that I observed in the competency hearing the other day was a child who was very shy, very quiet, had to be really led by the prosecutor. A child who wouldn't promise to tell the truth, would just say maybe, and indicated she was afraid of the defendant.
I'm convinced, as of the other day, that the child knew what it meant to tell the truth, but that she appeared to be, to the court, afraid to testify. She wouldn't promise to tell the truth. Today I think it is clear that the child is competent, that she knows the difference between right and wrong. That she's able to relate matters and is able to express herself and knows the importance of telling the truth in court....
....
Furthermore, it would certainly appear that she is definitely afraid of the defendant. There is no indication that the defendant has made threats, but clearly the child is in fear. She expressed that fear the other day when she testified. She expressed the fear today. She expressed it when she was leaving my chambers. She expressed it, not only in words, but in the way that she communicated in the hearing. It is quite clear that she is afraid of the defendant. I don't know precisely how or why this fear arose, but it is quite clear to me that she would not be able to testify were she present in court and able to observe the defendant. She was looking at him the other day and it apparently figured very strongly in her mind.
Report of Proceedings at 250-52. See also Clerk's Papers at 44-48 (Findings and Conclusions Pursuant to Testimony of Child by Closed Circuit Television).
The trial court ruled that requiring the child to testify in front of the Defendant would cause her to suffer serious emotional or mental distress that would prevent her from reasonably communicating at trial; that the prosecutor had made all reasonable efforts to prepare the child for trial; that the strength of the State's case would be significantly impaired without the testimony of the child; and that there was no less restrictive method of obtaining the child's testimony that could adequately protect her from serious emotional or mental distress. The trial court then ruled that the child would be permitted to testify at trial via closed-circuit television, pursuant to RCW 9A.44.150.
*717 Following the trial, the jury found the Defendant guilty of first degree child molestation.
The Defendant appealed his conviction on the ground that the child's testimony by closed-circuit television violated his state and federal constitutional right to confront witnesses against him "face to face" and also violated his rights to due process and trial by jury.[3] The Court of Appeals affirmed the conviction, State v. Foster, 81 Wash.App. 444, 915 P.2d 520 (1996), and this court granted review.

ISSUES
1. Does RCW 9A.44.150, on its face or as applied in this case, violate a defendant's constitutional right to confront witnesses against him?
2. Was there substantial evidence to support the trial court's conclusion that requiring the child victim to testify in the presence of the Defendant would cause the child serious emotional or mental distress that would prevent her from reasonably communicating at trial?
3. Does testimony of a child victim by closed-circuit television deny a defendant his constitutional right to due process or to trial by jury?

DISCUSSION
Introduction
RCW 9A.44.150, the statute which permits a child witness to testify via one-way closed-circuit television provides, in pertinent part:
(1) On motion of the prosecuting attorney in a criminal proceeding, the court may order that a child under the age of ten may testify in a room outside the presence of the defendant and the jury while one-way closed circuit television equipment simultaneously projects the child's testimony into another room so the defendant and the jury can watch and hear the child testify if:
(a) The testimony will describe an act or attempted act of sexual contact performed with or on the child by another or describe an act or attempted act of physical abuse against the child by another;
(b) The testimony is taken during the criminal proceeding;
(c) The court finds by substantial evidence, in a hearing conducted outside the presence of the jury, that requiring the child to testify in the presence of the defendant will cause the child to suffer serious emotional or mental distress that will prevent the child from reasonably communicating at the trial. If the defendant is excluded from the presence of the child, the jury must also be excluded;
....
(e) The court finds that the prosecutor has made all reasonable efforts to prepare the child for testifying, including informing the child or the child's parent or guardian about community counseling services, giving court tours, and explaining the trial process. If the prosecutor fails to demonstrate that preparations were implemented or the prosecutor in good faith attempted to implement them, the court shall deny the motion;
(f) The court balances the strength of the state's case without the testimony of the child against the defendant's constitutional *718 rights and the degree of infringement of the closed-circuit television procedure on those rights;
(g) The court finds that no less restrictive method of obtaining the testimony exists that can adequately protect the child from the serious emotional or mental distress;
(h) When the court allows the child to testify outside the presence of the defendant, the defendant can communicate constantly with the defense attorney by electronic transmission and be granted reasonable court recesses during the child's testimony for person-to-person consultation with the defense attorney;
(i) The court can communicate with the attorneys by an audio system so that the court can rule on objections and otherwise control the proceedings;
(j) All parties in the room with the child are on camera and can be viewed by all other parties. If viewing all participants is not possible, the court shall describe for the viewers the location of the prosecutor, defense attorney, and other participants in relation to the child;
(k) The court finds that the television equipment is capable of making an accurate reproduction and the operator of the equipment is competent to operate the equipment; and
(l) The court imposes reasonable guidelines upon the parties for conducting the filming to avoid trauma to the child or abuse of the procedure for tactical advantage.
The prosecutor, defense attorney, and a neutral and trained victim's advocate, if any, shall always be in the room where the child is testifying. The court in the court's discretion depending on the circumstances and whether the jury or defendant or both are excluded from the room where the child is testifying, may remain or may not remain in the room with the child.
....
(3) The court shall make particularized findings on the record articulating the factors upon which the court based its decision to allow the child to testify via closed-circuit television pursuant to this section. The factors the court may consider include, but are not limited to, a consideration of the child's age, physical health, emotional stability, expressions by the child of fear of testifying in open court or in front of the defendant, the relationship of the defendant to the child, and the court's observations of the child's inability to reasonably communicate in front of the defendant or in open court. The court's findings shall identify the impact the factors have upon the child's ability to testify in front of the jury or the defendant or both and the specific nature of the emotional or mental trauma the child would suffer. The court shall determine whether the source of the trauma is the presence of the defendant, the jury, or both, and shall limit the use of the closed-circuit television accordingly.
(4) This section does not apply if the defendant is an attorney pro se unless the defendant has a court-appointed attorney assisting the defendant in the defense.
(5) This section may not preclude the presence of both the victim and the defendant in the courtroom together for purposes of establishing or challenging the identification of the defendant when identification is a legitimate issue in the proceeding.
....
(7) All recorded tapes of testimony produced by closed-circuit television equipment shall be subject to any protective order of the court for the purpose of protecting the privacy of the child.
(8) Nothing in this section creates a right of the child witness to a closed-circuit television procedure in lieu of testifying in open court.
(9) The state shall bear the costs of the closed-circuit television procedure.
In 1990 the United States Supreme Court held that a substantially similar Maryland statute did not violate the Confrontation Clause of the Sixth Amendment.[4]Maryland *719 v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). Defendant Foster concedes that, under the reasoning of Craig, Washington's statute does not facially violate the Confrontation Clause of the Sixth Amendment. He argues, instead, that the state constitution's confrontation clause, Const art. I, § 22 (amend. 10), provides greater protection than that provided by the Sixth Amendment, and that the Washington statute is unconstitutional, on its face, under article I, section 22, or that, as applied in his case, the statute violates his right to confrontation under both federal and state constitutions.
Although this court has not previously addressed the issue, the Court of Appeals has determined that the protection afforded by the state and federal confrontation clauses is identical. State v. Florczak, 76 Wash.App. 55, 71, 882 P.2d 199 (1994); State v. Whisler, 61 Wash.App. 126, 132-33, 810 P.2d 540 (1991) (analysis is the same under both state and federal confrontation clauses). See also Pettit v. Rhay, 62 Wash.2d 515, 519-20, 383 P.2d 889 (1963) (the purposes of the state and federal constitutional provisions pertaining to the right of confrontation appear to be the same). However, in State v. Palomo, 113 Wash.2d 789, 794, 783 P.2d 575 (1989), this court opined that the state confrontation clause arguably provides greater protection than its federal counterpart but declined to decide the issue because it was not properly presented for review. The issue is properly raised and thoroughly briefed in the present case.
The Gunwall Test
In deciding whether this state's constitution extends broader rights than the federal constitution in any particular context, we examine the constitutional guarantees in light of the criteria outlined in State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). It is through the application of these criteria that "[r]ecourse to our state constitution as an independent source for recognizing and protecting the individual rights of our citizens [will] spring not from pure intuition, but from a process that is at once articulable, reasonable and reasoned." Gunwall, 106 Wash.2d at 63, 720 P.2d 808 (footnote omitted).[5] The purpose of the Gunwall analysis
is two-fold: first, to lend assistance to counsel where briefing might be appropriately directed in cases in which independent state grounds are urged; and second, to help ensure that if the court does use independent state grounds in reaching its conclusion it will consider the six factors to the end that the decision shall be based on well founded legal reasons and not by merely substituting its own notion of justice for that of duly elected legislative bodies or the United States Supreme Court.
State v. Boland, 115 Wash.2d 571, 575, 800 P.2d 1112 (1990).
We begin our analysis with an overview of the federal right of confrontation because we must first understand the breadth of that right before we can determine whether our state confrontation clause provides greater protection to an accused than does the federal confrontation clause. See, e.g., State v. Rainford, 86 Wash.App. 431, 436, 936 P.2d 1210 (our state constitutional analysis begins with federal law only to place the state law in context), review denied, 133 Wash.2d 1019, 948 P.2d 387 (1997).
The Sixth Amendment provides that a person accused of a crime has the right "to be confronted with the witnesses against him." This Sixth Amendment right is applicable to state court proceedings through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 *720 L.Ed.2d 923 (1965). The primary object of the Confrontation Clause was
to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.
Mattox v. United States, 156 U.S. 237, 242-43, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895).
The rights guaranteed under the Confrontation Clause include the right to have the witness physically present, to have that testimony offered under oath and subject to cross examination, and to provide the trier of fact with an opportunity to observe the demeanor of the witness. Craig, 497 U.S. at 845-46, 110 S.Ct. at 3163. The primary interest secured by the Confrontation Clause, however, is the right of cross-examination, "`the principal means by which the believability of a witness and the truth of his testimony are tested.'" Kentucky v. Stincer, 482 U.S. 730, 736, 107 S.Ct. 2658, 2662, 96 L.Ed.2d 631 (1987) (quoting Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974)). The Court in Stincer called cross-examination the "`greatest legal engine ever invented for the discovery of truth,'" 482 U.S. at 736, 107 S.Ct. at 2662 (quoting California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970), which, in turn, quoted from 5 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1367 (3d ed.1940)); White v. Illinois, 502 U.S. 346, 356, 112 S.Ct. 736, 743, 116 L.Ed.2d 848 (1992); State v. Rohrich, 132 Wash.2d 472, 477-78, 939 P.2d 697 (1997).
In Craig, the Supreme Court explained that although face-to-face confrontation with witnesses appearing at trial is important, it is not an indispensable element of the right guaranteed by the Sixth Amendment. Craig, 497 U.S. at 849-50, 110 S.Ct. at 3165-66. Face-to-face confrontation is not the sine qua non of the right to confrontation. Craig, 497 U.S. at 847, 110 S.Ct. at 3164. The Craig Court held that interpreting the Confrontation Clause to require face-to-face confrontation in every instance would result in the abrogation of virtually every hearsay exception, 497 U.S. at 848, 110 S.Ct. at 3165, as well as other exceptions such as the removal from the courtroom of a defendant whose behavior is disruptive. 497 U.S. at 850, 110 S.Ct. at 3166. See also Ohio v. Roberts, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). The Court in Craig, after reviewing prior Confrontation Clause cases, held:
In sum, our precedents establish that "the Confrontation Clause reflects a preference for face-to-face confrontation at trial," [Ohio v. Roberts, 448 U.S. at 63, 100 S.Ct. at 2537], a preference that "must occasionally give way to considerations of public policy and the necessities of the case," [Mattox, 156 U.S. at 243, 15 S.Ct. at 340]. "[W]e have attempted to harmonize the goal of the Clauseplacing limits on the kind of evidence that may be received against a defendantwith a societal interest in accurate factfinding, which may require consideration of out-of-court statements." [Bourjaily v. United States, 483 U.S. 171, 182, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987)]. We have accordingly interpreted the Confrontation Clause in a manner sensitive to its purposes and sensitive to the necessities of trial and the adversary process.... Thus, though we reaffirm the importance of face-to-face confrontation with witnesses appearing at trial, we cannot say that such confrontation is an indispensable element of the Sixth Amendment's guarantee of the right to confront one's accusers.
Craig, 497 U.S. at 849-50, 110 S.Ct. at 3165-66.
In Craig the Court retreated from its earlier statements in Coy v. Iowa, 487 U.S. 1012, 1016-17, 108 S.Ct. 2798, 2801, 101 L.Ed.2d 857 (1988) (holding that the Confrontation Clause guarantees the defendant a physical, face-to-face meeting with the witnesses appearing before the trier of fact), and returned *721 to the reasoning of Roberts, 448 U.S. at 64, 100 S.Ct. at 2538 (holding that competing interests, if closely examined, may justify dispensing with face-to-face confrontation at trial).
Thus, although the right is not absolute, a defendant generally has the right, under the Sixth Amendment, to demand the physical presence, at trial, of accusatory witnesses. This preferred right of physical presence, or "face-to-face" confrontation, may be dispensed with only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured. Craig, 497 U.S. at 850, 110 S.Ct. at 3166.
The Supreme Court has recognized that child abuse "is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim." Pennsylvania v. Ritchie, 480 U.S. 39, 60, 107 S.Ct. 989, 1003, 94 L.Ed.2d 40 (1987); Coy, 487 U.S. at 1022-23, 108 S.Ct. at 2804 (O'Connor, J., concurring). Accordingly, in Craig, the Court held that "a State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." 497 U.S. at 853, 110 S.Ct. at 3167. Under the Sixth Amendment, a state may authorize testimony via one-way closed-circuit television where that procedure is necessary to protect the welfare of the particular child witness who seeks to testify; where the child would be traumatized, not by the courtroom generally, but by the presence of the defendant; and where the emotional distress suffered by the child witness in the presence of the defendant is more than de minimus, i.e., more than mere nervousness or reluctance to testify. Craig, 497 U.S. at 855-56, 110 S.Ct. at 3169.
With this background of federal law, we turn to our analysis of this state's confrontation clause. In determining whether our state constitution's confrontation clause provides greater protection to defendants than does the Sixth Amendment, we consider the so-called Gunwall factors, namely: (1) the textual language of the state constitution; (2) significant differences in the texts of the parallel provisions of the federal and state constitutions; (3) state constitutional and common law history; (4) preexisting state law; (5) differences in structure between the federal and state constitutions; and (6) whether the subject matter of the particular constitutional provision presents a matter of particular state interest or local concern. Gunwall, 106 Wash.2d at 61-62, 720 P.2d 808.
The Defendant's argument relies primarily on the difference in the language and structure between the federal and state constitutions (Gunwall factors 1, 2 and 5).
We have previously concluded that an analysis of the differences in structure (factor 5 of the Gunwall criteria) supports an independent state constitutional analysis in every case. Our consideration of this factor is always the same; that is that the United States Constitution is a grant of limited power to the federal government, while the state constitution imposes limitations on the otherwise plenary power of the state. Gunwall, 106 Wash.2d at 66, 720 P.2d 808; State v. Russell, 125 Wash.2d 24, 61, 882 P.2d 747 (1994).
With respect to factors 1 and 2, we look first to the language of our state constitution's confrontation clause. Article I, section 22 provides, in pertinent part, that an "accused shall have the right ... to meet the witnesses against him face to face." The parallel provision in the federal constitution provides that an accused has the right "to be confronted with the witnesses against him." U.S. Const. amend. VI.
Although the language of the Sixth Amendment and this state's confrontation clause is not word-for-word identical, the meaning of the words used in the parallel clauses is substantially the same. See, e.g., WILLIAM C. ANDERSON, A DICTIONARY OF LAW 226 (1889) (defining the word "confront" as to "bring face to face"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 477, 811 (1986) (defining "confront" to mean to "bring face to face"; defining "face" to mean to "confront"). Additionally, the United States Supreme Court has consistently interpreted the language *722 of the Confrontation Clause to mean "face-to-face" confrontation. See, e.g., Mattox, 156 U.S. at 244, 15 S.Ct. at 340 (an 1895 case in which the Supreme Court stated that the Confrontation Clause guaranteed a face-to-face confrontation at trial); Coy, 487 U.S. at 1017, 108 S.Ct. at 2801.
We find no significant difference between the language used in the parallel provisions of the state and federal confrontation clauses. Even if we were to determine that the state provision was significantly distinctive, this fact, alone, would be an insufficient reason for relying on the state constitution as an independent ground for decision. State v. Jones, 112 Wash.2d 488, 498 n. 11, 772 P.2d 496 (1989); State v. Reece, 110 Wash.2d 766, 778, 757 P.2d 947 (1988) (analysis of textual differences is the beginning of state constitutional analysis, it is not the end; if it were, the other Gunwall criteria would be superfluous).
The Defendant also argues that state constitutional history supports an independent application of the state confrontation clause (Gunwall factor 3). This third Gunwall factor directs the court to determine whether state constitutional history and common law reflect an intention to confer greater protection from the state government than has been afforded by the federal constitution. Gunwall, 106 Wash.2d at 61, 720 P.2d 808; Reece, 110 Wash.2d at 779, 757 P.2d 947.
Although the history of the adoption of a particular constitutional provision sometimes reveals an intention that will support reading the provision independently of federal law, Gunwall, 106 Wash.2d at 61, 720 P.2d 808, the history of article I, section 22 provides no such support. The Journal of the 1889 Washington State Constitutional Convention is not helpful in determining whether the drafters of the state constitution intended the rights of an accused under the face-to-face language to be broader than those guaranteed under the federal Confrontation Clause.[6] The Journal, in a footnote, indicates that some provisions of Washington's constitution, including article I, section 22, were identical to the Indiana and Oregon state constitutions. JOURNAL OF THE WASHINGTON STATE CONSTITUTIONAL CONVENTION, 1889, at 511 n. 37 (Beverly P. Rosenow ed., 1962). However, the phrase meet witnesses against him "face to face" is used in many state constitutions.[7] The language appears, as well, in the early statutory law of the Washington Territory. See, e.g., Laws of 1859, ch. 1, § 2, at 104.
"Face to face" confrontation or "physical presence" of witnesses was generally, but not always, required under the Sixth Amendment Confrontation Clause or under common law near the time our state was drafting its constitution. See, e.g., Mattox, 156 U.S. 237, 15 S.Ct. 337; Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244 (1878); State v. Baldwin, 15 Wash. 15, 18-19, 45 P. 650 (1896) (admission of dying declaration in murder trial did not violate defendant's right to confront witnesses face to face as it was the practice to admit such statements in this state "up to the present time"); State v. Cushing, 17 Wash. 544, 563-64, 50 P. 512 (1897) (admission of deceased witness's prior testimony did not violate defendant's right to *723 confront witnesses face to face; such evidence was not intended to be excluded by the constitution).
A review of the limited history of this state constitutional provision does not reveal an intent on the part of the drafters to create a broader right than that which was stated in the Sixth Amendment and which existed at common law. Therefore, our early constitutional and common law history does not support an analysis of the state confrontation clause independent of the federal right.
In considering factors 4 and 6 of the Gunwall criteria, we focus on the context in which the issue involving the state constitutional right is raised. State v. Johnson, 128 Wash.2d 431, 445, 909 P.2d 293 (1996) (factors 4 and 6 are generally unique to the context in which the interpretation question arises); Russell, 125 Wash.2d at 58, 882 P.2d 747. Under factor 4 we examine preexisting state law relevant to a defendant's right to confront, face to face, a child witness who claims to have been physically or sexually abused by the defendant. See Gunwall, 106 Wash.2d at 66, 720 P.2d 808 (tracing the history of pertinent law from territorial days to the present). Factor 6 requires us to determine whether the right claimed, in the context of the particular case before us, is a matter of such singular state interest or local concern that our constitution should be interpreted independently of the federal constitution. These two factors overlap in this case and we discuss them together. We consider (1) statutory and case law relating to a defendant's right to confront witnesses "face to face" and whether that right has historically been interpreted to be absolute and without exception, and (2) a defendant's right of confrontation as it relates to testimony of young children who are alleged to be victims of sexual or physical abuse.
Since 1859 Washington has recognized a defendant's right to confront accusing witnesses "face to face." Laws of 1859, ch. 1, § 2, at 104.[8] As originally enacted, the law appeared to guarantee an accused an absolute right "to meet the witnesses against him face to face." However, in 1881, several years before the state constitution was drafted, this statute was amended to provide for an exception to face-to-face confrontation.[9] At least since that time, neither the statute nor our state confrontation clause has been interpreted literally to provide a defendant with an absolute right to meet accusing witnesses face to face in every instance. Cushing, 17 Wash. 544, 50 P. 512 (admission of deceased witness's prior testimony at a trial following remand did not violate defendant's article I, section 22 right to face-to-face confrontation); State v. Bolen, 142 Wash. 653, 254 P. 445 (1927) (right to confront witnesses did not apply to documentary evidence of victim's fingerprints); State v. Johnson, 194 Wash. 438, 78 P.2d 561 (1938) (admission of documentary evidence does not violate article I, section 22); State v. Ortego, 22 Wash.2d 552, 157 P.2d 320, 159 A.L.R. 1232 (1945) (reproduction of testimony given by witnesses at former trial where defendant was present did not violate article I, section 22); State v. Perkins, 32 Wash.2d 810, 204 P.2d 207 (1949) (jury view of crime scene outside presence of defendant does not violate article I, section 22); State v. Ryan, 103 Wash.2d 165, 691 P.2d 197 (1984) (upholding this state's child victim hearsay statute as constitutional).
In 1975, this court in State v. Kreck, 86 Wash.2d 112, 116-17, 542 P.2d 782 (1975), discussing the confrontation right embodied in the Sixth Amendment and in article I, section 22, held:
This right of confrontation, however, has always been subject to exceptions:
But this general rule of law embodied in the Constitution ... intended to secure the right of the accused to meet the witnesses face to face, and to thus sift the testimony produced against him, has always had certain well recognized exceptions. As examples are cases where the notes of testimony of deceased witnesses, of which the accused has had the right of cross-examination in a former *724 trial, have been admitted. Dying declarations, although not made in the presence of the accused, are uniformly recognized as competent testimony.... Documentary evidence to establish collateral facts, admissible under the common law, may be admitted in evidence.

Dowdell v. United States, 221 U.S. 325, 330, 31 S.Ct. 590 [592], 55 L.Ed. 753 (1911). These exceptions are subject to modification and addition, so long as the purpose of the rule is not hindered:
The exceptions are not even static, but may be enlarged from time to time if there is no material departure from the reason of the general rule.

Synder [sic] v. Massachusetts, 291 U.S. 97, 107, 54 S.Ct. 330, 333, 78 L.Ed. 674, 90 A.L.R. 575 (1934); accord, State v. Ortego, 22 Wash.2d 552, 563, 157 P.2d 320, 159 A.L.R. 1232 (1945).
In recent years, the exceptions to the right have been enlarged, particularly in cases involving the testimony of very young victims. In 1982 the Legislature enacted RCW 9A.44.120, the child victim hearsay statute. Laws of 1982, ch. 129, § 2. This law provides that hearsay evidence of a child's descriptions of sexual abuse is admissible at trial if the child testifies or is unavailable and, if unavailable, the evidence is corroborated. In Ryan, this court upheld the constitutionality of RCW 9A.44.120 against a confrontation clause challenge. We recognized that neither the federal nor state confrontation clause has been read literally, for to do so would result in eliminating all exceptions to the hearsay rule. Ryan, 103 Wash.2d at 169, 691 P.2d 197. See also State v. Swan, 114 Wash.2d 613, 666, 790 P.2d 610 (1990) (child victim hearsay statute does not violate Sixth Amendment right to face-to-face confrontation).
In State v. Jones, 112 Wash.2d 488, 772 P.2d 496 (1989), we discussed the State's interest in permitting testimony under the child victim hearsay statute in light of the defendant's right to test the trustworthiness of the evidence against him. The State's interest in the present case is similar. In Jones, we stated:
RCW 9A.44.120 is principally directed at alleviating the difficult problems of proof that often frustrate prosecutions for child sexual abuse. Acts of abuse generally occur in private and in many cases leave no physical evidence. Thus, prosecutors must rely on the testimony of the child victim to make their cases. Children are often ineffective witnesses, however. Feeling intimidated and confused by courtroom processes, embarrassed at having to describe sexual matters, and uncomfortable in their role as accuser of a defendant who may be a parent, other relative or friend, children often are unable or unwilling to recount the abuses committed on them....
RCW 9A.44.120 is responsive to the prosecutor's need for such hearsay evidence, making it available when it would not otherwise be admissible. The statute is not without its proper limitations, however.
112 Wash.2d at 493-94, 772 P.2d 496 (footnote omitted).
More recently, this court has discussed the right to confrontation in child abuse prosecutions in Rohrich, 132 Wash.2d 472, 939 P.2d 697 (interpreting the meaning of "testify" as used in RCW 9A.44.120). While primarily relying on the language of the Sixth Amendment right to confrontation, this court noted the applicability of article I, section 22. In Rohrich we recognized that at the core of the right to confrontation is "a preference for live testimony." Rohrich, 132 Wash.2d at 477, 939 P.2d 697. We held that live testimony, under oath, subject to cross examination, and under the watchful eyes of the jury maximizes the accuracy of the truth-seeking process in criminal trials. Rohrich, 132 Wash.2d at 477, 939 P.2d 697.
Live testimony is preferred because it is believed that face-to-face confrontation enhances the accuracy of factfinding. Rohrich, 132 Wash.2d at 479, 939 P.2d 697; Coy, 487 U.S. at 1019, 108 S.Ct. at 2802 (it is always more difficult to lie about a person "to his face" than "behind his back"). The nature and purpose of witness examination, however, are to elicit honest testimony, *725 not fearful responses, and to procure the truth, not cause intimidation.[10]
Like the Sixth Amendment guarantee, the right to confront accusing witnesses face to face under the Washington constitution has not been interpreted to be absolute. This is particularly true in cases involving young children alleged to have been the victims of sexual abuse. Preexisting law does not support an independent analysis of our state confrontation clause in the context of the present case.
The concern of this state in the fundamental right of an accused to confront witnesses against him or her, in the context of child victim testimony, is not unique to the State of Washington (Gunwall factor 6). See, e.g., Maryland v. Craig, 497 U.S. at 839, 110 S.Ct. at 3160 (amicus briefs urging the Supreme Court to uphold the constitutionality of the Maryland child witness protection statute were filed by the attorneys general of 40 states); Karen R. Hornbeck, Washington's Closed-Circuit Testimony Statute: An Exception to the Confrontation Clause to Protect Victims in Child Abuse Prosecutions, 15 U. PUGET SOUND L. REV. 913, 915-19 (1992). Washington's interest in the protection of a defendant's confrontation right in this context is comparable to the national interest in this same right. An analysis of the sixth Gunwall factor, therefore, does not support an independent analysis of our constitution in this case.
It is only the textual and structural differences between the Sixth Amendment and article I, section 22 that provide any support for independent construction of this state's confrontation clause in the present case. These differences, while important to constitutional analysis, do not, by themselves, generally justify an independent analysis of our constitutional provisions, and they do not justify it in this case.
For purposes of determining whether RCW 9A.44.150 comports with the confrontation clause, we view the Defendant's state right to confrontation and his Sixth Amendment right to confrontation as being identical.
Constitutionality of RCW 9A.44.150
The confrontation clauses of the state and federal constitutions guarantee the right of an accused to confront witnesses against him or her "face to face." This is a preferred right of physical presence, or "face-to-face" confrontation, which may be dispensed with only if (1) excusing the physical presence of the particular witness is necessary to further an important public policy and (2) the reliability of the testimony is otherwise assured. Craig, 497 U.S. at 850, 110 S.Ct. at 3166.
The important interest of this state in enacting RCW 9A.44.150 is set forth in the legislative declaration of the law's purposes.
The legislature declares that protection of child witnesses in sexual assault and physical abuse cases is a substantial and compelling interest of the state. Sexual and physical abuse cases are some of the most difficult cases to prosecute, in part because frequently no witnesses exist except the child victim. When abuse is prosecuted, a child victim may suffer serious emotional and mental trauma from exposure to the abuser or from testifying in open court. In rare cases, the child is so traumatized that the child is unable to testify at trial and is unavailable as a witness or the child's ability to communicate in front of the jury or defendant is so reduced that the truth-seeking function of trial is impaired. In other rare cases, the child is able to proceed to trial but suffers long-lasting trauma as a result of testifying in court or in front of the defendant. The creation of procedural devices designed to enhance the truth-seeking process and to shield child victims from the trauma of exposure to the abuser and the courtroom is a compelling state interest.

Laws of 1990, ch. 150, § 1 (emphasis added).
The Supreme Court has held that a state's interest in protecting child abuse victims *726 from the emotional trauma of testifying is sufficiently important to permit a child witness to testify at trial via one-way closed-circuit television, if the state makes an adequate showing of necessity on a case-by-case basis. Craig, 497 U.S. at 855, 110 S.Ct. at 3169.
The Court held that the requisite finding of necessity must be case specific and must include: (1) a finding by the trial court that the use of the closed-circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify; (2) a finding by the trial court that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant; and (3) a finding by the trial court that the emotional distress suffered by the child witness in the presence of the defendant is more than de minimus. Craig, 497 US. at 855-56, 110 S.Ct. at 3169. The Court in Craig declined to decide the minimum showing required before the closed-circuit television procedure could be used because the Maryland statute, like the Washington statute, RCW 9A.44.150, required a showing that the child would suffer serious emotional distress such that the child cannot reasonably communicate. The Court held this statutory standard "clearly suffices to meet constitutional standards." Craig, 497 U.S. at 856, 110 S.Ct. at 3169. The Defendant points out that Washington's statute, unlike the Maryland statute, permits the procedure in cases where the child witness will experience "serious emotional or mental distress that will prevent the child from reasonably communicating at the trial," RCW 9A.44.150(1)(c) (emphasis added), rather than permitting the procedure only where emotional trauma "prevents the child from reasonably communicating." The Defendant argues that the inclusion of the term "at the trial" in the Washington statute goes beyond the decision in Craig. We disagree. The state statute, like the statute before the court in Craig, deals with a child's inability to testify, at trial, in the presence of the defendant. Craig held that the state's interest in protecting children "from the trauma of giving testimony in child abuse cases" was the important state interest justifying the televised testimony. Craig, 497 U.S. at 853, 110 S.Ct. at 3167 (emphasis added). It did not hold, as Defendant Foster suggests, that the state's interest is limited to preventing trauma to children in a general sense which is unrelated to the child's ability to testify. The Court in Craig was concerned about the ability of the child to testify as a witness at trial.
Indeed, where face-to-face confrontation causes significant emotional distress in a child witness, there is evidence that such confrontation would in fact disserve the Confrontation Clause's truth-seeking goal....
In sum, we conclude that where necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate, the Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation.
Craig, 497 U.S. at 857, 110 S.Ct. at 3169-70 (citations omitted).
We agree with the Court of Appeals in the present case that the degree of emotional distress required by RCW 9A.44.150(1)(c) is "that degree which renders the child unable to reasonably communicate in the defendant's presence at trialno more and no less." Foster, 81 Wash.App. at 454-55, 915 P.2d 520. This standard comports with the standard approved of in Craig.
Like the statutory scheme examined in Craig, Washington's statutory procedure set forth in RCW 9A.44.150 preserves all of the elements of the confrontation right except physical face-to-face confrontation.
The child witness must be competent to testify and must testify under oath; the defendant retains full opportunity for contemporaneous cross-examination; and the judge, jury, and defendant are able to view (albeit by video monitor) the demeanor (and body) of the witness as he or she testifies. Although we are mindful of the *727 many subtle effects face-to-face confrontation may have on an adversary criminal proceeding, the presence of these other elements of confrontationoath, cross-examination, and observation of the witness' demeanoradequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony.... [T]o the extent the child witness' testimony may be said to be technically given out of court (though we do not so hold), these assurances of reliability and adversariness are far greater than those required for admission of hearsay testimony under the Confrontation Clause. We are therefore confident that use of the one-way closed circuit television procedure, where necessary to further an important state interest, does not impinge upon the truth-seeking or symbolic purposes of the Confrontation Clause.
Craig, 497 U.S. at 851-52, 110 S.Ct. at 3166-67 (citation omitted).
Washington's statute, on its face and as applied in this case, is limited in its application to children who are under the age of 10 and whose testimony will describe an act or attempted act of sexual contact performed with or on the child by another or describe an act or attempted act of physical abuse against the child by another. RCW 9A.44.150(1)(a). The testimony must be taken during the criminal proceeding. RCW 9A.44.150(1)(b). There must be no less restrictive method of obtaining the testimony that can adequately protect the child. RCW 9.44.150(1)(g). The defendant must have constant communication with defense counsel by electronic means and must be granted reasonable recesses during the child's testimony for person-to-person contact with the defense counsel. RCW 9A.44.150(1)(h). All parties in the room with the child must be on camera, the television equipment must be capable of making an accurate reproduction, and there must be no abuse of the procedure for tactical advantage. RCW 9A.44.150(1)(j)-(l). The prosecuting attorney must have made all reasonable efforts to prepare the child for testifying. RCW 9A.44.150(1)(e). The child must be competent to testify, must testify, in person, at trial, must testify under oath, must be subjected to the rigors of cross examination, and must be visible, through electronic means, during testimony so that the jury may observe the child's demeanor during testimony. We hold that these procedures are adequate for ensuring the reliability of the child's testimony.
Under the reasoning of Craig, we hold that the use of closed-circuit testimony, when necessary and under the procedures and protections outlined in RCW 9A.44.150, does not violate a defendant's right to confront the witnesses against him or her, as guaranteed by article I, section 22 of our state constitution and by the Sixth Amendment.
Sufficiency of Evidence
The Defendant next argues that substantial evidence did not exist in this case to support a finding that the child involved here would suffer serious emotional or mental distress sufficient to satisfy the standard of Craig or of RCW 9A.44.150(1)(c). That subsection of the statute requires the court to find by substantial evidence that
requiring the child to testify in the presence of the defendant will cause the child to suffer serious emotional or mental distress that will prevent the child from reasonably communicating at the trial.
In making this finding, the trial court may consider
the child's age, physical health, emotional stability, expressions by the child of fear of testifying in open court or in front of the defendant, the relationship of the defendant to the child, and the court's observations of the child's inability to reasonably communicate in front of the defendant or in open court.
RCW 9A.44.150(3).
Substantial evidence exists when the record contains evidence of sufficient quantity to persuade a fair-minded, rational person that the declared premise is true. Ino Ino, Inc. v. City of Bellevue, 132 Wash.2d 103, 112, 937 P.2d 154, 943 P.2d 1358 (1997), cert. denied, ___ U.S. ___, 118 S.Ct. 856, 139 L.Ed.2d 755 (1998); World Wide Video, Inc. *728 v. City of Tukwila, 117 Wash.2d 382, 387, 816 P.2d 18 (1991).
Here the evidence included two competency hearings. The trial court was able to observe the demeanor of the child on two occasionsonce in the presence of the Defendant and once by closed-circuit television, outside the presence of the Defendant. The trial court also heard the child's testimony that she was scared when she was in the presence of the Defendant, and that she was so afraid she could not promise to tell the truth if she could see him. The trial court heard the child's spontaneous remarks in chambers with respect to her fear of testifying in the Defendant's presence. The court heard evidence of the child's behavior following the first hearing. This personal observation of the child's ability to communicate when testifying both in and out of the Defendant's presence in this case, coupled with the statement made by the child, is of a sufficient quantity to persuade a fair-minded person that testifying in the presence of the Defendant would cause her to suffer such serious emotional or mental distress that she would not be able to reasonably communicate at trial. It is doubtful that expert testimony from counselors or psychologists could have added much to the trial court's basis for assessment in this case. See Wildermuth v. State, 310 Md. 496, 530 A.2d 275 (1987) (a case cited with approval in Craig, 497 U.S. at 856, 110 S.Ct. at 3169, and in which testimony was taken only from experts and then primarily about the effects of testifying on children generally); Allison C. Goodman, Two Critical Evidentiary Issues in Child Sexual Abuse Cases: Closed-Circuit Testimony by Child Victims and Exceptions to the Hearsay Rule, 32 AM. CRIM. L. REV. 855, at 866-67 (1995) (questioning the accuracy and neutrality of expert testimony in these kinds of cases).
In the present case, the trial judge had the opportunity to personally observe the effects of the circumstances on the child victim herself. The trial court found that the child suffered severe emotional and mental distress after the first competency hearing, and that the Defendant was her source of trauma. The only reason the trial court initially found the child incompetent to testify was because the child suffered emotional distress to the point where she was unable to reasonably communicate in the Defendant's presence.
We conclude the trial court had substantial evidence to find that the child victim would suffer serious emotional distress that would prevent her from reasonably communicating at trial if she were required to testify in the presence of the Defendant.
Due Process/Right to Jury
The Defendant argues that the child's testimony by closed-circuit television denied him his right to due process because it impacted the presumption of innocence. The Defendant appears to argue that he was unable to present a defense claiming that the child witness was not telling the truth. In fact, the Defendant had the opportunity to, and did, cross-examine the child, Report of Proceedings at 285-89, and was able to, and did, argue that the child's story was not accurate. Report of Proceedings at 505-13. However, he argues that he was not able to give the jury the additional evidence of having the child's reactions to him while the child testified in his presence. The Defendant cites no authority for this proposition. The child testified that she understood the difference between a lie and a truth and she understood the importance of telling the truth in court. She was sworn and testified under oath. The jury was able to observe the child's demeanor as she testified. The jury was instructed to treat the televised testimony the same way it treated all testimony. A jury is presumed to follow the court's instructions. Hizey v. Carpenter, 119 Wash.2d 251, 269-70, 830 P.2d 646 (1992); State v. Imhoff, 78 Wash.App. 349, 351, 898 P.2d 852 (1995). There is nothing in the record to indicate the televised testimony affected the jury's ability to decide the case fairly. The only evidence the jury did not see was what the trial court described as the child's fear of the Defendant.
The Defendant also argues that he was denied the right to a jury trial because the jury viewed the child via closed-circuit television, rather than in person. The Defendant argues that the television camera *729 reduced 12 sets of eyes to one set. Under the statute, and the trial court's directions, all of the individuals in chambers during the child's testimony were on camera. There is nothing in the record to indicate that the jury's ability to perceive and to observe the child witness was diminished or manipulated by the televised procedure.
We find no constitutional violation.

CONCLUSION
The right to face-to-face confrontation under the federal and state confrontation clauses, while a fundamental and important right of an accused, is not absolute. The right must occasionally give way to considerations of public policy and the necessities of the case. However, any encroachment upon this right should be rare and may be justified only as necessary on a case-by-case basis and, then, only when the encroachment does not impinge upon the truth-seeking purpose of the constitutional right.
Affirmed.
DURHAM, C.J., and DOLLIVER and TALMADGE, JJ., concur.
ALEXANDER, Justice, concurring in part, dissenting in part.
The majority concludes, after conducting an examination of the Gunwall[1] factors, that an independent analysis of article I, section 22 of the Washington State Constitution is not required. I disagree with that conclusion and join the dissent in its conclusion that an analysis independent of the Sixth Amendment confrontation right is required.
I part company with the dissent, however, in its conclusion that article I, section 22 requires, in all circumstances, an eyeball-to-eyeball confrontation between witnesses and the accused. That view of article I, section 22 is too rigid and inflexible. For reasons I set forth hereafter, I prefer a more flexible and enduring view of article I, section 22 and conclude, therefore, that the procedures outlined in RCW 9A.44.150 do not run afoul of that provision. Accordingly, I join the result reached by the majority.
The dissent correctly acknowledges that all that we know of the history of article I, section 22, is that, upon adoption, it was identical to the confrontation clauses of the constitutions of the states of Indiana and Oregon. Dissenting op. at 736 (citing Journal of the Washington State Constitutional Convention, 1889, at 511 n. 37 (Beverly P. Rosenow ed., 1962)). In examining, then, how this court should construe the meaning of the "face-to-face" language in article I, section 22, I agree that it is instructive to turn first to the examples of those two states. Unfortunately, in doing so the dissent draws the wrong conclusions.
The Oregon Supreme Court, in contrasting the "confrontation" language used in other state constitutions with the "`face to face' formulation" employed in article I, section 11 of Oregon's constitution has written only that "[w]e do not suggest any difference in meaning between these phrases." State v. Smyth, 286 Or. 293, 593 P.2d 1166, 1168 n. 3 (1979). Moreover, the Oregon Supreme Court has noted that "[i]n interpreting Article I, section 11, of the Oregon Constitution, the court has looked to the United States Supreme Court's decisions interpreting the federal parallel Sixth Amendment Confrontation Clause." State v. Hancock, 317 Or. 5, 854 P.2d 926, 933 n. 8 (1993) (emphasis added). Although Oregon appellate courts have not been confronted with a case similar to the present case, what they have written so far provides no support for the dissent's position. Indeed, it is curious that the dissent quotes language from Smyth wherein the Oregon Supreme Court embraces the United States Supreme Court's construction, in Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), of the Sixth Amendment confrontation right. Dissenting op. at 737. By doing this the dissent sets a trap for itself. After all, if the Oregon Supreme Court is to be bound by the United States Supreme Court's Sixth Amendment jurisprudence in interpreting Oregon's own confrontation clause, surely it must follow that it would agree with the holding in Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).
*730 The Indiana Constitution also contains "face-to-face" language in its article I, section 13 confrontation clause. The dissent correctly observes that the Indiana Supreme Court nullified, as violative of Indiana's confrontation clause, a portion of a law that allowed videotaped testimony by a child sexual abuse victim. Brady v. State, 575 N.E.2d 981, 988 (Ind.1991). The dissent, however, misreads Brady and somehow construes the invalidated recorded testimonial procedure as being analogous to the live closed-circuit testimonial procedure at issue here. Dissenting op. at 736. In actuality, the Brady court expressly left intact that portion of the Indiana statute providing for live closed-circuit testimony, noting that "[i]n such a closed circuit arrangement, there is no person or body interposed between the witness and the accused and a face-to-face meeting as contemplated by the Constitution occurs." Brady, 575 N.E.2d at 989. The statute was, thus, "left in a sensible and administrable form."[2]Brady, 575 N.E.2d at 988-89. The Indiana Supreme Court has also written that "[o]f course, the `face to face' language in the Indiana clause, as in other states, has not always been interpreted literally. Otherwise, the testimony of all absent witnesses, whether unavailable through death or illness or threat, would never be admissible at trial." Miller v. State, 517 N.E.2d 64, 71 (Ind.1987).
Rather than heeding guidance from states upon whose constitutions article I, section 22 was based, the dissent selectively relies upon declarations by the highest courts in Massachusetts[3] and Pennsylvania that the "face-to-face" language in their states' confrontation clauses was incompatible with closed-circuit or videotaped testimony laws. The Pennsylvania constitution was subsequently amended to replace the "face-to-face" language in its confrontation clause, leaving Massachusetts as the only state taking the position that the dissent advocates.
Indeed, the dissent glosses over decisions in "face-to-face" jurisdictions that are contrary to its holding at the same time, ironically, that it chides the majority for ignoring "opinions from other states interpreting their `face-to-face' confrontation clauses." Dissenting op. at 733.
There are six states where statutory language allowing closed-circuit or videotaped testimony from child sexual abuse victims has been deemed constitutional under those states' "face-to-face" confrontation clauses.[4]See Brady, 575 N.E.2d 981; State v. Chisholm, 250 Kan. 153, 825 P.2d 147 (1992); Commonwealth v. Willis, 716 S.W.2d 224 (Ky.1986); State v. Naucke, 829 S.W.2d 445 (Mo.1992); State v. Warford, 223 Neb. 368, 389 N.W.2d 575, 61 A.L.R.4th 1141 (1986); State v. Self, 56 Ohio St.3d 73, 564 N.E.2d 446 (1990). Two other "face-to-face" jurisdictions appear likely to join the majority rule when confronted with this issue. State v. Sanchez, 201 Wis.2d 219, 548 N.W.2d 69, 72 (1996) ("[T]he confrontation clause ... of the state constitution, which provides `[i]n all criminal prosecutions the accused shall enjoy the right ... to meet the witnesses face to face ...,' provides a right identical to that stated in the federal Constitution's confrontation clause....") (emphasis added) (citing State v. Burns, 112 Wis.2d 131, 332 N.W.2d 757, 762 (1983)); McGriff v. State, 672 A.2d 1027, 1030 (Del.Supr.1996) ("The right of a *731 criminal defendant to confront the witnesses against him ... is not absolute ... and does not require that every witness testify in court in front of the defendant.").
I agree with the Kentucky Supreme Court's statement that "[t]here is no constitutional right to eyeball to eyeball confrontation. The choice of the words `face to face' may have resulted from an inability to foresee technological developments permitting cross-examination without physical presence." Willis, 716 S.W.2d at 230.
Beyond the fact that the Indiana and Oregon confrontation clauses inspired the framers of article I, section 22, we have no record of what definitions of the term "face-to-face" were considered by the delegates to the constitutional convention. Finding definitions in dictionaries contemporaneous with the 1889 constitutional convention is no easy task at this late date, and the dissent was not able toalthough it was certainly correct to seek definitions of the term "face-to-face," as opposed to those interpreting the word "confront." See Dissenting op. at 734. I will share two brief historic definitions of the term "face-to-face," not because I accept the contention that dictionaries displace the law but, rather, to show only that others could envision a meaning for the term beyond that contemplated, in contemporary hindsight, by the dissent. The Century Dictionary and Cyclopedia, first published in 1889, in 1913 defined "face-to-face" as follows: "[I]n a confronting attitude or position; in actual presence or propinquity: as, to be face to face with impending disaster." THE CENTURY DICTIONARY AND CYCLOPEDIA 2110 (1913). A 1930 law dictionary defined "face-to-face" as follows: "It seems to be held everywhere and by all courts of last resort, that `to be confronted with the witnesses against him' and to `meet the witnesses face to face,' mean one and the same thing; and that is that the accused shall have the right or privilege to cross-examine the witnesses against him." BALLENTINE'S LAW DICTIONARY 480 (1930). Obviously, neither of these definitions provides comfort for the dissent's literalist position.
Even assuming that the fundamental purpose of the "face-to-face" language of article I, section 22 is that the defendant be in the physical presence of adverse witnesses, this objective is met under the statute at issue here because it provides that the defendant's counsel is always in the same room with the witness. RCW 9A.44.150(1)(l). Defense counsel is in constant contact with the defendant both electronically and physically. RCW 9A.44.150(1)(h). If the defendant is acting as his own attorney closed-circuit testimony will not be allowed. RCW 9A.44.150(4). This is consistent with our previous holding that "`[t]he essential purpose of confrontation is cross-examination.'" Pettit v. Rhay, 62 Wash.2d 515, 521, 383 P.2d 889 (1963) (quoting approvingly Brown v. United States, 234 F.2d 140, 144 (6th Cir. 1956)); see also Self, 564 N.E.2d at 452 ("[T]he purpose of the `face to face' clause of the Ohio Constitution (as well as the parallel provision of the Sixth Amendment) is to guarantee the opportunity to cross-examine and the right to observe the proceeding."). Because the right to cross-examine is in no way impaired by closed-circuit testimony, criminal defense is not compromised by admission of this testimony. Indeed, a setting that facilitates candor by otherwise reluctant witnesses, such as children accusing adults of sex crimes, "may well aid a defendant in eliciting favorable testimony from the child witness." Craig, 497 U.S. at 851, 110 S.Ct. at 3167.
The dissent cites a preexisting Washington law enacted in 1909 as evidence that the term "face-to-face" is to be read literally. Dissenting op. at 739 (citing RCW 10.52.060). Yet RCW 10.52.060 does not define what the term requires, and its mere repetition of the words "face-to-face" adds nothing to their interpretation. The dissent also cites an early Washington case for its statement that "the examination of ... a witness shall be in open court, in the presence of the accused." Dissenting op. at 736 (quoting State v. Stentz, 30 Wash. 134, 142, 70 P. 241 (1902)). This dicta, however, is no more compelling, or clear, than that from other cases.[5] Nor does *732 our recent statement that the federal confrontation clause "represents a preference for live testimony .... in a face-to-face setting before the watchful eyes of the jury" compel the result that the dissent seeks here.[6]State v. Rohrich, 132 Wash.2d 472, 477, 939 P.2d 697 (1997) (emphasis added) (citation omitted). This "preference" under the Sixth Amendment is not without its exceptions, as Craig certainly illustrates. Thus, state preexisting law does not support the majority's application of article I, section 22 in the present case.
In light of the foregoing, it appears that the dissent is unduly modest about the uniqueness and implications of its literal interpretation of the "face-to-face" language in our state's confrontation clause. It only makes an exception for hearsay on the basis of some fancy linguistic footwork that does not explain away an earlier statement of this very court in analyzing the Sixth Amendment and article I, section 22 confrontation clauses: "Neither clause has been read literally, for to do so would result in eliminating all exceptions to the hearsay rule." State v. Ryan, 103 Wash.2d 165, 169, 691 P.2d 197 (1984) (citing Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). The dissent is at odds with this holding when it strains to find, as it must given its literalist position in this case, that hearsay is, in fact, acceptable under a literal reading of article I, section 22. In so doing, the dissent appears to label a binding precedent to the contrary as "folly." See Dissenting op. at 739.
In this case, I find that, due to modern technology, RCW 9A.44.150 provides for the functional equivalent of the temporal and physical proximity that the "face-to-face" language of article I, section 22 requires. This is in keeping with the fact that "[c]onstitutions are designed to endure through the years, and constitutional provisions should be interpreted to meet and cover changing conditions of social and economic life." State ex rel. Linn v. Superior Court, 20 Wash.2d 138, 145, 146 P.2d 543 (1944). Moreover, children have long enjoyed a special status under the law. See, e.g., New York v. Ferber, 458 U.S. 747, 757, 102 S.Ct. 3348, 3354, 73 L.Ed.2d 1113 (1982) ("[W]e have sustained legislation aimed at protecting the physical and emotional well-being of youth even when the laws have operated in the sensitive area of constitutionally protected rights."). This court has, to give a related example, held that "closure of judicial proceedings or court documents may, under some circumstances, be necessary in order to protect child victims of sexual assault from further trauma and harm and to protect their rights of privacy." Allied Daily Newspapers v. Eikenberry, 121 Wash.2d 205, 214, 848 P.2d 1258 (1993); see also Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 608, 102 S.Ct. 2613, 2621, 73 L.Ed.2d 248 (1982) ("A trial court can determine on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim.") (footnote omitted). This despite the First Amendment interests of the press, and the right of open access to judicial proceedings guaranteed by article I, section 10 of the Washington State Constitution.
Finally, I should note that I do not imply that, even with regard to child witnesses, all alternative testimonial procedures (e.g., videotaped depositions in lieu of live testimony) would necessarily meet the command of article I, section 22. Even this procedure with respect to witnesses other than the children statutorily protected here might not pass muster. However, we cannot rule on hypotheticals. Given that the majority opinion does not find an independent meaning for *733 the "face-to-face" language, it would be premature at this juncture to offer an "analytical test or a framework for determining when the confrontation clause is violated," Dissenting op. at 733, without there being a consensus on this court to embrace it. That task is better left for another day. Today, though, I find simply that the specific testimonial procedure at issue here is supported by an important state interest and is sufficiently open and within the orbit of the courtroom to pass constitutional mustereven under an independent analysis of article I, section 22.
JOHNSON, Justice, dissenting.
Article I, section 22 of our state constitution provides every accused with the right to "meet the witnesses against him face to face." The Sixth Amendment to the United States Constitution provides an accused with the right simply to "be confronted with the witnesses against him." The majority neither considers our cases discussing article I, section 22 nor looks to opinions from other states interpreting their "face-to-face" confrontation clauses. Even though our state constitution requires that its provisions are "mandatory, unless by express words they are declared to be otherwise," Wash. Const. art. I, § 29, the majority and the concurrence/dissent interpret our state confrontation clause identical to its federal counterpart. The majority and the concurrence/dissent effectively write "face-to-face" out of article I, section 22, by not giving meaning to those specific words and by not conducting the proper analysis. Therefore, I dissent.

FACE-TO-FACE
The majority is correct in analyzing Foster's argument under the framework of State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). Furthermore, I agree that analysis of the fifth Gunwall factor (differences in structure between the federal and state constitutions) "supports an independent state constitutional analysis in every case." Majority at 721. I write separately, however, because I disagree with the majority's conclusion that, after a Gunwall analysis, "the Defendant's state right to confrontation and his Sixth Amendment right to confrontation [are] identical." Majority at 725. Instead, I would hold Wash. Const. art. I, § 22 has a different meaning than the Sixth Amendment and that RCW 9A.44.150 fails to comport with that meaning.
Furthermore, neither the majority nor the concurrence/dissent have established any analytical test or a framework for determining when the confrontation clause is violated. In my opinion, the language of the state confrontation clause is absolute and allows for no "flexibility," dependent on the significance of the interest involved. Article I, section 22 prohibits any adopted procedure where live testimony is presented in a manner other than in the physical presence of the defendant. Under the analysis of the majority and the concurrence/dissent, the Legislature is free to prescribe this method of testimony anytime it feels compelled to do so, regardless of the protections of our state constitution.[1]

Gunwall Factor 1The Textual Language of Article I, Section 22
The majority combines this factor with the second Gunwall factor (differences in texts of the parallel constitutional provisions) concluding, "the meaning of the words used in the parallel clauses is substantially the same" and there is "no significant difference between the language used in the parallel provisions of the state and federal confrontation clauses." Majority at 721 (emphasis added). Such cursory analysis does injustice to the constitutional jurisprudence we established in Gunwall. Particularly where the plain language of article I, section 22, without relation to other state or federal constitutional provisions, provides the clear and cogent answer. See Malyon v. Pierce County, 131 Wash.2d 779, 799, 935 P.2d 1272 (1997) ("Appropriate constitutional analysis begins with the text and, for most purposes, should end there as well").
*734 The majority points to various dictionary definitions of "confront" in support of its conclusion that "face-to-face" should not be literally interpreted. Focus on the term "confront," however, is misplaced. We know Foster has a fundamental right to confront witnesses against him, including the child witness in this case. The issue before us is the manner in which he is entitled to exercise that fundamental right. In that regard, the focus should be placed on those words we attempt to ascribe a particular meaning "face-to-face." Webster's Third New International Dictionary 812 (1986) defines "face-to-face" as "within each other's sight or presence: involving close contacts: in person face-to-face meeting of the two leaders> face-to-face for the first time>." See also Webster's Unabridged Dictionary 431 (1853) defining "face," in part, as "face to face; when both parties are present; as to have accusers face to face." (Emphasis added). This indicates that over the past 133 years, the common understanding of "face-to-face" includes actual presence. I can envision no other meaning. While the ordinary and customary understanding of the term "confront" may support the majority's conclusion, that is not the issue or the proper analysis. Under our state provision, we must give meaning to the plain words used: face-to-face. Use of the specific term "face-to-face" renders RCW 9A.44.150 unconstitutional by preventing witnesses from being within an accused's "sight or presence" or testifying "in person." The textual language of article I, section 22 on its own, and the common understanding of that textual language, support Foster's assertion that a different interpretation is required under our state constitution.
In State v. Coe, 101 Wash.2d 364, 679 P.2d 353 (1984) we faced an analogous situation. That case involved the broadcast of tape recordings in violation of a court order. The superior court held the broadcasters in contempt. We reversed, holding that the superior court's order was void under article I, section 5 of our state constitution. In so holding, we compared article I, section 5 to the First Amendment of the United States Constitution and concluded that the particular words of the state constitution provided the clear answer, stating, "unlike the first amendment to the United States Constitution, the plain language of Const. art. 1, § 5 seems to rule out prior restraints under any circumstances[.]" Coe, 101 Wash.2d at 374, 679 P.2d 353 (emphasis added). Here, the unequivocal plain language of article I, section 22 also provides the clear answer.

Gunwall Factor 2Significant Differences in the Texts of the Parallel Provisions of the Federal and State Constitutions
The majority holds, "if we were to determine that the state provision was significantly distinctive, this fact, alone, would be an insufficient reason for relying on the state constitution as an independent ground for decision." Majority at 721 (citing State v. Jones, 112 Wash.2d 488, 498 n. 11, 772 P.2d 496 (1989); State v. Reece, 110 Wash.2d 766, 778, 757 P.2d 947 (1988)). Because our primary responsibility in this case requires us to give meaning to and define the scope of the provisions of our state constitution, I disagree. See Coe, 101 Wash.2d at 373-74, 679 P.2d 353 ("state courts have a duty to independently interpret and apply their state constitutions ... to apply the federal constitution before the Washington Constitution would be ... improper and premature").
Oftentimes, significant textual differences do require a different interpretation of the state constitution. See Malyon v. Pierce County, 131 Wash.2d 779, 935 P.2d 1272 (1997) (the difference between language in article I, section 11 and the First Amendment alone demands a different interpretation). While it is true that stylistic or rhetorical differences in language between state and federal constitutional provisions do not always support a different analysis, Richmond v. Thompson, 130 Wash.2d 368, 380, 922 P.2d 1343 (1996), I cannot conclude that the differences between the two provisions here are either stylistic or rhetorical.
We must assume when the framers of our state constitution drafted and adopted article I, section 22 they were aware of the linguistic differences between that section and the Sixth Amendment. See Robert F. Utter, Freedom and Diversity in a Federal System: *735 Perspectives on State Constitutions and the Washington Declaration of Rights, 7 U. PUGET SOUND L. REV. 491, 515 (1984); Lebbeus J. Knapp, The Origin of the Constitution of the State of Washington, 4 WASH. HIST. Q., No. 4, at 246 (1913) ("[t]hat these prohibitions [the prohibitions against legislation in the state constitution] are not copied verbatim from any other constitution shows that the convention contained men of sufficient originality, ability and legal training to formulate the prohibitions along lines they believed to be important").[2] We know the Sixth Amendment existed at the time the Washington Constitution was debated and we know the framers chose different and specific words for use in article I, section 22. See, e.g., Commonwealth v. Bergstrom, 402 Mass. 534, 541 n. 9, 524 N.E.2d 366 (1988) (framers of Massachusetts' "face-to-face" confrontation clause were aware of other states' confrontation clauses and chose more explicit language to convey unequivocally their meaning). The challenge in this case is to give meaning to those specific words, not to ignore them.
In addition to the significant textual differences between the state and federal confrontation clauses, both constitutional provisions as a whole contain differences requiring an independent analysis of article I, section 22. For example, article I, section 22 explicitly enunciates several rights not specifically delineated in the language of the Sixth Amendment: the right to appear in person; the right to have a copy of the charge; the right to testify in one's own behalf; and the right to appeal in all cases. These additional specific rights conferred support the conclusion that the state provision must be interpreted independent of its federal counterpartan interpretation that is more restrictive against legislative interference with an accused's rights.
Perhaps the best indicator that article I, section 22 has a different meaning than the Sixth Amendment, however, is the difference between the methods each clause provides for confrontation. Namely, the Sixth Amendment provides no method by which confrontation is to be achieved. Article I, section 22, on the other hand, explicitly dictates that confrontation is to take place in a "face-to-face" manner. The proper inference drawn from this language difference is that the framers of our state confrontation clause intended to delineate the confrontation right in greater detail, thus requiring a different interpretation than the federal right.
While the significant textual differences between the state and federal confrontation clauses are, in my opinion, enough to warrant an interpretation of article I, section 22 different than the Sixth Amendment, we must give a proper analysis to the remaining Gunwall factors. That analysis also provides additional support for a different interpretation of article I, section 22.

Gunwall Factor 3State Constitutional and Common Law History
The majority concludes the constitutional and common law history of article I, section 22 provide no support for an independent interpretation of the state confrontation clause. Majority at 722. I disagree. In State v. Stentz, 30 Wash. 134, 70 P. 241 (1902), we addressed the meaning of article I, section 22, stating:
[T]he appellant had the right ... to meet the witnesses against him face to face. Art. 1, § 22, constitution. This means that the examination of such a witness shall be in open court, in the presence of the accused, with the right of the accused to cross-examine such witness as to facts testified to by him....
Stentz, 30 Wash. at 142, 70 P. 241 (emphasis added).[3]
*736 We reaffirmed the "face-to-face" requirement of article I, section 22 in State v. Rohrich, 132 Wash.2d 472, 939 P.2d 697 (1997). In that case, we held the federal confrontation clause, at its core, "represents a preference for live testimony" because live testimony requires the witness to "relate the facts herself in open court subject to cross examination while under oath in a face-to-face setting before the watchful eyes of the jury." Rohrich, 132 Wash.2d at 477, 939 P.2d 697 (emphasis added). In so holding, we specifically noted the confrontation clause in article I, section 22 is "even more specific" than its federal counterpart. Rohrich, 132 Wash.2d at 477 n. 9, 939 P.2d 697. The majority has not addressed Stentz and, while recognizing the proposition for which Rohrich stands, dismisses that case by stating if requiring witnesses to testify in a face-to-face setting will elicit "fearful responses" and "cause intimidation," the "face-to-face" mandate of article I, section 22 may be disregarded. Majority at 724.[4] Curiously, the majority cites the dissenting opinion in Brady v. State, 575 N.E.2d 981 (Ind.1991) for this proposition. As discussed below, Brady supports the conclusion that article I, section 22 has a meaning different than the Sixth Amendment.
The constitutional history of article I, section 22 supports a different interpretation than the United States Supreme Court has chosen to give the Sixth Amendment. When adopted, article I, section 22 was identical to article I, section 11 of the Oregon Constitution and article I, section 13 of the Indiana Constitution. Journal of the Washington State Constitutional Convention, 1889, at 511 n. 37 (Beverly P. Rosenow ed., 1962). Without discussion of cases from other jurisdictions employing "face-to-face" confrontation clauses, let alone Oregon or Indiana, the majority concludes state constitutional and common law history "does not reveal an intent on the part of the drafters to create a broader right than that which was stated in the Sixth Amendment." Majority at 22. A look to how those states have interpreted the language our provision was modeled after is helpful in analyzing the same words used in our state constitution.
Brady, 575 N.E.2d 981, indicates that a literal interpretation of "face-to-face" in article I, section 22 is required. The majority cites this case, concedes it means that Indiana interprets its face-to-face language literally, and then ignores the decision without even an attempt to distinguish it. Majority at 722 n. 7. In Brady, the Indiana Supreme Court addressed the constitutional validity of a statute that provided for two-way, closed-circuit testimony and testimony by videotape. The court expressly struck down that portion of the statute providing for videotaped testimony as violative of Indiana's "face-to-face" confrontation clause. Brady, 575 N.E.2d at 988. The videotape procedure used in Brady is identical to the closed-circuit testimony procedure employed under RCW 9A.44.150.
Like this case, the witness in Brady was a child molestation victim. The witness's testimony was videotaped with the judge, prosecutor and defense attorney present. The defendant was able to see and hear the witness via closed-circuit television. The defendant was also able to speak with his counsel through two-way microphone hook-up. Brady, 575 N.E.2d at 984. A videotape of the examination of the witness was then shown to the jury. The sole difference between the procedure in Brady and the procedure under RCW 9A.44.150 is that in Brady the jury saw a videotape, while in this case the jury viewed the testimony live. In striking down the statute, the Indiana Supreme Court stated:
The Indiana Constitution recognizes that there is something unique and important in requiring the face-to-face meeting between the accused and the State's witnesses as *737 they give their trial testimony While the right to cross-examination may be the primary interest protected by the confrontation right in Article I, § 13 of the Indiana Constitution, the defendant's right to meet the witnesses face to face cannot simply be read out of our State's Constitution.
Brady, 575 N.E.2d at 988 (emphasis added).
While the Oregon Supreme Court has not interpreted the precise issue we face in this case, it has analyzed its "face-to-face" confrontation clause in a manner supporting a literal interpretation of Wash. Const. art. I, § 22. In State v. Smyth, 286 Or. 293, 593 P.2d 1166 (1979), the Oregon Supreme Court stated:
There, the Court referred to the object of the requirement to secure `a personal examination and cross-examination of the witness in which the accused has an opportunity ... of compelling him [the witness] to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.' Mattox v. United States, 156 U.S. 237, 242-243, 15 S.Ct. 337 [339-340], 39 L.Ed. 409 (1895), quoted at [Barber v. Page] 390 U.S. [719,] 721, 88 S.Ct. 1318, 1320 [20 L.Ed.2d 255 (1968)].
While the importance of the jury's observation of the witness was not given weight in the Oregon decisions cited above, we think the point stressed in Mattox is also the better view of Or. Const. art. I, § 11.
Smyth, 286 Or. at 300 n. 8, 593 P.2d 1166 (emphasis added). The majority does not acknowledge the existence of Smyth, let alone analyze or attempt to distinguish it. With regard to Brady, the majority concedes it stands for a contrary interpretation of an identical provision then simply ignores it.[5]
The analysis of the constitutional history of article I, section 22 does not end there, however. The "face-to-face" language of Oregon's confrontation clause was derived from the Massachusetts Constitution of 1780, one of the original state declarations of rights. The Massachusetts confrontation clause states, in part, "every subject shall have the right ... to meet the witnesses against him face to face." Mass. Const. art. 12. In Commonwealth v. Johnson, 417 Mass. 498, 631 N.E.2d 1002 (1994), the Supreme Judicial Court of Massachusetts interpreted "face-to-face" to provide greater protection than the Sixth Amendment stating, "[u]nlike the Sixth Amendment, however, art. 12 contains an indispensable element of face-to-face confrontation of witnesses appearing at trial." Johnson, 417 Mass. at 503, 631 N.E.2d 1002.
The Massachusetts high court affirmed that interpretation in Commonwealth v. Amirault, 424 Mass. 618, 677 N.E.2d 652 (1997). In that case, the court invalidated a defendant's conviction for child sexual abuse due to a seating arrangement in the courtroom. The arrangement allowed various child witnesses to testify in such a manner that, although in the physical presence of the defendant, the witnesses and the defendant could not view each others' faces. The court held the defendant's right to face-to-face confrontation was violated by the arrangement, stating "[w]e now state unequivocally that the right of confrontation in our Declaration of Rights simply requires a judge to refrain from designing seating configurations which comfortably shield a witness from a face-to-face meeting." Amirault, 677 N.E.2d at 663 n. 9.[6]
*738 The case of Commonwealth v. Ludwig, 527 Pa. 472, 594 A.2d 281 (1991) provides particular support for the idea that Wash. Const. art. I, § 22 has a different meaning than the Sixth Amendment. In 1776, the Pennsylvania Constitution did not provide a "face-to-face" confrontation right for accused persons. Then, in 1790 and 1792, after the federal constitution was adopted, Pennsylvania amended its constitution to provide for "face-to-face" confrontation. See Smyth, 286 Or. at 297 n. 3, 593 P.2d 1166. Two hundred years later, the Pennsylvania Supreme Court determined the use of closed-circuit television to transmit a child's testimony violated the defendant's state constitutional right to "face-to-face" confrontation. Ludwig, 527 Pa. 472, 594 A.2d 281.
The concurrence/dissent correctly points out that the Pennsylvania constitution was amended to eliminate the "face-to-face" provision of that state's confrontation clause. Concurrence/dissent at 730. This, however, illustrates the proper method to change constitutional protections. If the citizens of Washington want to give up their right to "face-to-face" confrontation then, like Pennsylvania, our state constitution should be amended. In fact, the reason the Pennsylvania constitution was amended was to ameliorate the exact problem we face today. See Commonwealth v. Campion, 449 Pa.Super. 9, 17, 672 A.2d 1328, 1332 (1996) ("[i]t is apparent that the amendment allows for flexibility in the manner in which an accused is confronted by a child witness, apparently in recognition of the special sensitivities of children in such situations").[7] In bypassing the citizens of this state, the majority and the concurrence/dissent simply amend article I, section 22 by judicial fiat. Protecting our children from the "trauma" resulting from testifying is, I would agree, a compelling and legitimate policy. If the confrontation clause of article I, section 22 somehow hinders that policy, the clause may be amended. Such a change, however, must be instigated and approved by the citizens of Washington, not a majority of the sitting justices of this court.
The concurrence/dissent chides the dissent for "selectively" relying upon the above Massachusetts and Pennsylvania decisions "[r]ather than heeding guidance from states upon whose constitutions article I, section 22 was based [.]" Concurrence/dissent at 730. However, the concurrence/dissent, in yet another attempt to support the majority's lacking analysis, is guilty of its own accusations by relying on decisions from other jurisdictions that have no ties whatsoever to the development of our state's confrontation clause.[8]
A conclusion other than that offered by the majority and concurrence/dissent is required. Case law from our own state interpreting article I, section 22 requires a literal interpretation, as does the case law from jurisdictions upon which Washington's confrontation clause is based.

Gunwall Factor 4Preexisting Washington Law
The majority fails to address this factor separately, feeling the need to address it in conjunction with factor six (discussed infra). The majority states that because the territorial *739 law and RCW 10.52.060 provide an exception to face-to-face confrontation in the case of depositions taken at a time earlier than trial, our state confrontation clause has never been interpreted literally to provide a defendant with an absolute right to "meet accusing witnesses face to face in every instance." Majority at 723.
The majority's reliance on the deposition exception to the statute's "face-to-face" command is misplaced. To understand that, one must read the proviso of the statute. It states:
PROVIDED, That whenever any witness whose deposition shall have been taken pursuant to law by a magistrate, in the presence of the defendant and his counsel, shall be absent, and cannot be found when required to testify upon any trial or hearing, so much of such deposition as the court shall deem admissible and competent shall be admitted and read as evidence in such case.
RCW 10.52.060 (emphasis added). Thus, when we understand the nature of the exception to the otherwise applicable "face-to-face" rule, we see that two conditions must be met. First, the previous deposition must have been in the presence of the accused. Second, the witness must be absent. The first condition guarantees the accused has had the opportunity for a face-to-face confrontation with the witness at the deposition. The second condition assures that no better evidence can be found (i.e., the witness is not available to testify). Thus, the accused's right to face-to-face confrontation is still protected. If anything, the proviso supports a literal and more protective reading of article I, section 22.

Gunwall Factor 6The Particular Local Concern or State Interest of the Constitutional Provision at Issue
The majority holds that analysis of this factor does not support a conclusion that article I, section 22 has a meaning different than the Sixth Amendment because "the fundamental right of an accused to confront witnesses against him or her, in the context of child victim testimony, is not unique to the State of Washington." Majority at 725. While I agree that the issue of closed-circuit testimony is not unique to Washington, the majority has misinterpreted this factor. The question under this factor is whether the protection provided by the constitutional provision at issue is a matter of particular state or local concern. In that regard, the confrontation clause in article I, section 22 is directly a matter of state concern.
Not all states provide "face-to-face" confrontation as a fundamental right of the accused. While confrontation rights in general are not matters indicating particularized local concern over federal uniformity, application of those rights under our state constitution to a statute enacted by our state Legislature is undoubtedly of local and state concern.
Under an appropriate Gunwall analysis, particularly factors one through four, an independent analysis and result is required by our state constitution. In light of this examination, I conclude article I, section 22's confrontation clause was intended to and does provide different protections than the Sixth Amendment, to wit, preserving an accused's right to a physical face-to-face meeting with the witnesses against him or her. The plain language and the constitutional history of this provision compels this result.

HEARSAY
The State argues, and the majority holds, a literal interpretation of the confrontation clause in article I, section 22 would eliminate all exceptions to the hearsay rule. This is folly. The confrontation clause in article I, section 22 provides an accused with the right to a face-to-face confrontation of "the witnesses against him." In criminal cases, hearsay implicating a criminal defendant is admissible only if "the declarant is unavailable and the statement bears adequate indicia of reliability or particularized guaranties of trustworthiness." State v. Whelchel, 115 Wash.2d 708, 715, 801 P.2d 948 (1991). Under the rules of evidence in Washington, there are five instances where hearsay from an unavailable declarant is admissible. See ER 804(b)(1)-(4); ER 807.
Contrary to the concerns of the majority, a strict reading of the confrontation clause in *740 article I, section 22 does not implicate hearsay concerns. As noted above, the issue we face is the method by which an accused is guaranteed confrontation, not whether the accused is guaranteed confrontation at all. Under the hearsay exceptions, a value judgment has already been made that the accused is not entitled to confront those persons making the qualifying statements. Only after the right of confrontation arises with regard to available witnesses must we decide the method by which the accused is entitled to exercise that right. The correct analysis asks: (1) Does the accused have a right to confrontation in the given instance? (2) If so, to what type of confrontation is the accused entitled?
A recent Court of Appeals case is instructive. In State v. Connie J.C., 86 Wash.App. 453, 937 P.2d 1116 (1997), the defendant was convicted of numerous counts of child molestation. Her husband had previously pled guilty to the counts of rape, incest and child molestation. At the defendant's trial, her husband's statement on plea of guilty, including his written statement, was admitted into evidence and read three times. He never testified. The Court of Appeals reversed on the grounds that the defendant was denied her right to confrontation because "[t]here is no showing that Mr. C. [defendant's husband] was unavailable to testify at trial." Connie J.C., 86 Wash.App. at 454, 937 P.2d 1116. Unlike this case, only when a witness is unavailable to testify in person do hearsay exceptions come into play. When the witness testifies or is available to testify, however, article I, section 22 proscribes the method by which an accused is entitled to confront that witness: face-to-face.

SUBSTANTIAL EVIDENCE
The majority concludes "the trial court had substantial evidence to find that the child victim would suffer serious emotional distress that would prevent her from reasonably communicating at trial[.]" Majority at 728. I disagree.
Under RCW 9A.44.150, the trial court must find substantial evidence that requiring the child to testify in the presence of the defendant will result in the child suffering "serious emotional or mental distress that will prevent the child from reasonably communicating at the trial." (Emphasis added). The statute does not define the emphasized terms. The majority equates the witness' reluctance to testify truthfully with an inability to "reasonably communicate." There is no question that the witness could verbally express herself during a trial in front of the accused. The problem was with her veracity. That is an issue of competency.
The record is replete with evidence that the child could reasonably communicate in front of Mr. Foster. The majority even points out all the information the child was able to communicate in front of the defendant. Majority at 714-715. The majority also recognizes that in response to the question, "Are you afraid that something might happen if you tell the truth," the child communicated, "No." Majority at 715. But because the child answered questions more easily during a second hearing, out of Mr. Foster's presence, the trial court concluded the child would suffer serious emotional or mental distress that would prevent her from reasonably communicating in front of Mr. Foster. Although we do not conduct an independent statutory analysis, the United States Supreme Court has stated what is required at a bare minimum. In Maryland v. Craig, 497 U.S. 836, 856, 110 S.Ct. 3157, 3169, 111 L.Ed.2d 666 (1990) the Supreme Court stated that under a similar Maryland statute "the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than de minimus, i.e., more than `mere nervousness or excitement or some reluctance to testify[.]'" As the majority notes, at least one author has suggested that RCW 9A.44.150 is more deferential to the defendant's right to confrontation. Majority at 718 (citing 5B Karl B. Tegland, WASHINGTON PRACTICE (EVIDENCE) § 355(15) (3d ed. Supp. 1998)).
In my opinion, the record indicates that is the situation here. The witness never refused to communicate, and was never unresponsive or unintelligible. While it may have been easier for the witness to testify in the closed-circuit television arrangement, that is *741 not the standard. While intimidation may, under some circumstances, bring about untruthfulness, it may also cause a false accuser to admit the defendant is innocent of the crime charged. See Coy v. Iowa, 487 U.S. 1012, 1020, 108 S.Ct. 2798, 2802, 101 L.Ed.2d 857 (1988) ("face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs").

CONCLUSION
I am disappointed by the failure of both the majority and the concurrence/dissent to give effect or meaning to the words "face-to-face" in article I, section 22. By the mere fact those words appear in our state constitution, they mean something. Instead, the majority and the concurrence/dissent sidestep the issue and conclude what they do not mean. I am also troubled by the lengths the concurrence/dissent has gone to attack the dissent's position. The opinion of the concurrence/dissent may be summarized by one sentence, "I concur in the result only." By attacking the dissent's Gunwall analysis without offering its own, the concurrence/dissent engages in simple rabble-rousing.
Under the higher protection that should be afforded under the confrontation clause of Wash. Const. art. I, § 22, the statute in question fails to pass constitutional muster. We cannot read out of article I, section 22 the exact right guaranteed by the confrontation clause's plain language. The ordeal of a face-to-face meeting between accuser and accused is the focus of the substantive right guaranteed by the confrontation clause of our state constitution.
SMITH, MADSEN and SANDERS, JJ., concur.
NOTES
[1] RCW 9A.44.083 provides:

"(1) A person is guilty of child molestation in the first degree when the person has ... sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.
"(2) Child molestation in the first degree is a class A felony."
RCW 9A.44.010(2) defines "sexual contact" as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party."
[2] Kid's Court is a program operated in King County which is designed to prepare children who are alleged to be victims of sexual abuse and assault for their appearance at trial. The program includes elements of role playing involving a judge, prosecutor and other courtroom personnel. There is no discussion of the facts about any particular child's case. The focus of the program is to demystify the courtroom for young children who will be required to testify. State v. Carlson, 66 Wash.App. 909, 912, 833 P.2d 463 (1992).
[3] In his supplemental brief to this court, the Defendant additionally argues that because the second competency hearing was heard by closed-circuit television, he was denied his right to face-to-face confrontation. After oral argument the State moved to exclude this issue and two other issues which the State claims were raised for the first time at oral argument. We agree with the Defendant that no new issues were raised at oral argument. With respect to the issue allegedly first raised in the supplemental brief, we conclude that although the Defendant claims he objected to being excluded from the physical presence of the child at the second competency hearing, the objection is not clear from the record. Report of Proceedings at 232 (objection to leading questions). Furthermore, there is no Confrontation Clause violation under the Sixth Amendment where a defendant is excluded from a competency hearing so long as the defendant has the opportunity to cross-examine a child witness at trial, and where the questions asked at the competency hearing are limited to matters which are not related to the basic issues at trial. Kentucky v. Stincer, 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987); State v. Leavitt, 111 Wash.2d 66, 758 P.2d 982 (1988). We therefore deny the State's motion.
[4] "A side-by-side comparison with the Maryland statute shows that the statutes differ somewhat in wording, but that the substance of the two statutes is essentially the same. If anything, the Washington statute seems a bit more restrictive, and a bit more deferential to the defendant's right to confrontation." 5B Karl B. Tegland, WASHINGTON PRACTICE (EVIDENCE) § 355(15) (3d ed. Supp.1998).
[5] See Laura L. Silva, State Constitutional Criminal Adjudication in Washington Since State v. Gunwall: "Articulable, Reasonable and Reasoned" Approach?, 60 ALB. L. REV. 1871, 1906-07 (1997) (analyzing this court's application of the Gunwall factors and concluding that Washington's "adoption of a criteria approach has, as originally hoped, resulted in an `articulable, reasonable and reasoned' approach to developing an independent body of state constitutional law at least with regard to search and seizure law").
[6] The Bill of Rights contained in the United States Constitution was not applicable to the states in 1889 when Washington's constitution was drafted.
[7] See, e.g., Ariz. Const. art. II, § 24; Colo. Const. art. II, § 16; Del. Const. art. I, § 7; Ind. Const. art. I, § 13; Kan. Bill of Rights § 10; Ky. Const. § 11; Mass. Const. pt. 1, art. XII; Mo. Const. art. I, § 18(a); Mont. Const. art. II, § 24; Neb. Const. art. I, § 11; N.H. Const. pt. 1, art. XV; Ohio Const. art. I, § 10; Or. Const. art. I, § 11; Pa. Const. art. I, § 9; Tenn. Const. art. I, § 9; Wis. Const. art. I, § 7. Judicial interpretations of the various state constitutions are conflicting. Courts in some of these jurisdictions have interpreted the face-to-face language literally. See, e.g., Commonwealth v. Bergstrom, 402 Mass. 534, 524 N.E.2d 366, 374 (1988); Commonwealth v. Ludwig, 527 Pa. 472, 594 A.2d 281 (1991); Brady v. State, 575 N.E.2d 981 (Ind.1991). Courts in other jurisdictions have held the opposite. See, e.g., Commonwealth v. Willis, 716 S.W.2d 224, 227 (Ky.1986); State v. Self, 56 Ohio St.3d 73, 564 N.E.2d 446 (1990); State v. Burns, 112 Wis.2d 131, 332 N.W.2d 757, 764 (1983). See generally Annotation, Closed-Circuit Television Witness Examination, 61 A.L.R.4th 1155 (1988); Karen R. Hornbeck, Washington's Closed-Circuit Testimony Statute: An Exception to the Confrontation Clause to Protect Victims in Child Abuse Prosecutions, 15 U. PUGET SOUND L. REV. 913 (1992).
[8] The law continues to provide that right under RCW 10.52.060.
[9] The amendment provided that depositions taken at an earlier time could be introduced at trial. Laws of 1881, ch. 66, § 765, at 157-58.
[10] "Trial testimony, although naturally somewhat stressful, is not intended to be an ordeal for the witness. Rather, it is designed to be an engine for seeking and attaining truth. The revelation of an untruthful witness is properly the result of skillful cross-examination and not of a "stare-down" from the accused." Brady v. State, 575 N.E.2d 981, 992 (Ind.1991) (Krahulik, J., dissenting).
[1] State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986).
[2] For proof of this, one need look no further than the current statute, which provides for a closed-circuit television testimonial procedure for those under 14 and the mentally disabled. Ind.Code Ann. § 35-37-4-8 (Michie Supp.1997).
[3] The dissent engages in etymological overreach when it attempts to validate the Massachusetts's decisions for present purposes by noting that Oregon's confrontation clause was derived from that of Massachusetts's. Dissenting op. at 738. This could result in a paper chase with no end when, in fact, there is no evidence that our confrontation clause is derived from any other constitution other than those of Indiana and Oregon.
[4] The dissent questions whether two of these opinions were based upon state grounds, even though both invoke state confrontation clauses. Dissenting op. at 738 n. 8. State courts very commonly fail to specify as to whether their decisions rest upon state or federal constitutional grounds where they feel that the two constitutions "have exactly the same meaningthey have been interpreted in what is sometimes called `lockstep.'" James A. Gardner, The Failed Discourse of State Constitutionalism, 90 MICH. L.REV. 761, 788 (1992) (footnote omitted). In any event, these persuasive authorities are not the sine qua non of this opinion.
[5] See, e.g., Pettit, 62 Wash.2d at 519-20, 383 P.2d 889 ("The purpose of the state and federal constitutional provisions pertaining to the right of confrontation appear to be the same ..."); State v. Ortego, 22 Wash.2d 552, 563, 157 P.2d 320, 159 A.L.R. 1232 (1945) ("The privilege of confrontation has at all times had its recognized exceptions, and these exceptions are not static, but may be enlarged from time to time if there is no material departure from the reason underlying the constitutional mandate guaranteeing to the accused the right to confront the witnesses against him.") (emphasis added) (citing Snyder v. Massachusetts, 291 U.S. 97, 107, 54 S.Ct. 330, 333, 78 L.Ed. 674, 90 A.L.R. 575 (1934)).
[6] Adding little to this decision is dicta stating that "[t]he Washington clause is even more specific" than its federal counterpart. Rohrich, 132 Wash.2d at 477 n. 9, 939 P.2d 697. This certainly does not enlighten us as to in what way article I, section 22 is more specific and, without more, can by no means be taken to support the dissent's position.
[1] For example, under the analysis of the majority and the concurrence/dissent, if the Legislature enacts legislation similar to the statute at issue here for adult victims of crimes or even witnesses to victimless crimes, the face-to-face mandate of article I, section 22 may be circumvented.
[2] This document was prepared as a thesis for a master of arts degree at the University of Washington. The debates and proceedings of the convention were never published. Mr. Knapp gleaned information from survivors of the convention and newspapers of that day.
[3] The concurrence/dissent mischaracterizes our holding in Stentz as unpersuasive "dicta." Concurrence/dissent at 732. A closer reading of Stentz reveals otherwise. Stentz involved a material witness to a crime who, prior to trial, was drawn as a juror. The defendant's subsequent challenge for cause was denied, forcing him to exercise a peremptory challenge. In holding the defendant's challenge for cause should have been granted, we looked to the confrontation clause of article I, section 22 because it provided the defendant with the right to face that witness in court. Otherwise, the witness would have entered the jury deliberations armed with facts and impressions that the defendant would not have had the opportunity to rebut. Stentz, 30 Wash. at 142-43, 70 P. 241.
[4] Even the statute at issue, RCW 9A.44.150, is more protective of an accused's right to confrontation than the majority. RCW 9A.44.150(1)(c) requires the possibility of "serious emotional or mental distress that will prevent the child from reasonably communicating," a much higher burden to meet than the simple "fearful response" or "intimidation" standard which the majority contemplates.
[5] The concurrence/dissent tauntingly states that reliance on Smyth results in an analytical "trap" for this dissent because once a state constitutional provision is interpreted coextensive to an analogous federal provision, the state constitution's wagon is forever hitched to the federal interpretation and therefore subject to the shifting winds of federal jurisprudence. Concurrence/dissent at 730.

Such a position turns independent state constitutional analysis on its head. The purpose of independent state constitutional analysis is, and always has been, to determine the level of protection afforded by the state constitution. Contrary to the majority and concurrence/dissent, it is possible that if and when federal constitutional jurisprudence changes, a state judiciary may reject the new federal analysis and interpret its own constitution, independently.
[6] The concurrence/dissent makes accusation that reliance on Massachusetts decisions is "etymological overreach" because there is no direct evidence that article I, section 22 was based on the similar Massachusetts provision. At least, however, there is some established link providing justification for such reliance. The same cannot be said for the cases from other jurisdictions upon which the concurrence/dissent has mistakenly chosen to hang its hat.
[7] The language added to article I, section 9 of the Pennsylvania constitution reads: "Notwithstanding the provisions of this section, the General Assembly may by statute provide for the manner of testimony of child victims or child material witnesses in criminal proceedings, including the use of videotaped depositions or testimony by closed circuit television."
[8] It is unclear whether those cases cited by the concurrence/dissent even support its position. State v. Chisholm, 250 Kan. 153, 825 P.2d 147 (1992) (no independent analysis of state constitution); Commonwealth v. Willis, 716 S.W.2d 224 (Ky.1986) (statute upheld but plurality opinion sets out specific and detailed requirements for trial court, aside from statutory requirements, that must be complied with to ensure constitutional application of statute); State v. Naucke, 829 S.W.2d 445 (Mo.1992) (separate state constitutional provision is exception to "face-to-face" requirement); State v. Warford, 223 Neb. 368, 389 N.W.2d 575 (1986) (no independent analysis of state constitution and actual holding reverses defendant's conviction and remands for new trial); State v. Self, 56 Ohio St.3d 73, 564 N.E.2d 446 (1990) (specific exception to Ohio's "face-to-face" confrontation clause found in state constitution).