**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

STATE OF WASHINGTON,

        Respondent,

        v.

D.K.,

        Appellant.

No. 82596-8-I

ORDER GRANTING MOTION TO PUBLISH

The respondent, State of Washington, has filed a motion to publish. The appellant, D.K., has not filed an answer. The court has considered the motion, and a majority of the panel has reconsidered its prior determination not to publish the opinion filed for the above entitled matter on March 14, 2022 finding that it is of precedential value and should be published. Now, therefore, it is

ORDERED that the motion to publish is granted; it is further

ORDERED that the written opinion filed March 14, 2022 shall be published and printed in the Washington Appellate Reports.

_____
Judge Pro Tempore

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 82596-8-I |
| Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| D.K., | |
| Appellant. | |

APPELWICK, J. — D.K. appeals from his conviction for attempted child molestation in the first degree. He argues that allowing witnesses to testify remotely violated his constitutional rights to confrontation under both state and federal constitutions. He also argues that the testimony of S.W. and S.M. by remote video was not necessary and was unreliable. We affirm.

## FACTS

S.M. is the mother of seven children, including D.K. and S.W. In July 2019, 10 year old S.W. lived with her mom, but 16 year old D.K. lived with his father in Pasco, Washington. On July 16, 2019, D.K. arrived at S.M.'s house to spend a few weeks with his mother. S.W. testified that one night during his stay, D.K. sexually assaulted her. In the morning, S.W. told her mom what happened. D.K. left the house, and S.M took S.W. to the police station and the doctor's office.

Citations and pin cites are based on the Westlaw online version of the cited material.

D.K. was charged with child molestation in the first degree. The juvenile court trial began in March 2021, during the COVID-19 pandemic. Because S.W. is immunocompromised and S.M. is her caretaker and a critical witness, the State moved to permit them to testify remotely. D.K. objected to this motion, stating that it would violate his fundamental right to confront witnesses under the Sixth Amendment.

The State submitted medical evidence in support of the motion. S.W.'s doctor submitted multiple declarations stating that S.W. is under her care for two medical conditions that leave her immunocompromised. According to the physician, the unknown ramifications of COVID-19 on the nervous system meant that, "S.W. should not be out in public." The physician also stated that S.W. was not eligible for the COVID-19 vaccine at that time. S.M. and her medical provider submitted separate declarations that she is similarly immunocompromised. She too was not yet eligible for the vaccine. She also said that if she contracted COVID-19, "it is almost certain that [S.W.] would also contract COVID-19."

On February 19, 2021, the Supreme Court of Washington issued its fifth revised and extended order regarding court operations. In re Statewide Response by Washington State Courts to the COVID-19 Public Health Emergency, No. 25700-B-658, at 1 (Wash. Feb. 19, 2021), https://www.courts.wa.gov/content /publicUpload/Supreme%20Court%20Orders/25700-B-658.pdf. It states, "In all court operations, courts should follow the most protective public health guidance applicable in their jurisdiction, and should continue using remote proceedings for

No. 82596-8-I/3

public health and safety whenever appropriate." Id. at 3. As to criminal trials, the order states,

7. The previous order suspending all criminal jury trials until at least July 6, 2020 is lifted. Trials already in session where a jury has been sworn and social distancing and other public health measures are strictly observed may proceed or be continued if the defendant agrees to a continuance. Courts have authority to conduct nonjury trials by remote means or in person, with strict observance of social distancing and other public health measures.

8 Courts should continue to hear out of custody criminal and juvenile offender matters by telephone, video or other means that do not require in person attendance when appropriate. In addition, courts may hear matters that require in person attendance if those hearings strictly comply with social distancing and other public health measures.

Id. at 6-7 (emphasis omitted).

At trial, the court reviewed whether S.W.'s and S.M.'s testimony could be conducted remotely through the Zoom videoconference platform. In making its determination, the court considered the risk of COVID-19, the medical evidence relating to S.W.'s and S.M.'s health, the emergency order of the Washington Supreme Court, and case law. The court found, "The facts established are sufficient to establish the need for remote testimony in this kind of a case," and granted the motion to permit video testimony.

S.W. and S.M. testified remotely at trial. At the end of direct examination, S.W. identified D.K. by describing the clothing he was wearing at that time. However, defense counsel stated later in the trial that during the course of S.W.'s testimony, the camera had shifted and S.W. was unable to see D.K. during most of her testimony on direct examination.

3

No. 82596-8-I/4

The court found D.K. to be guilty of attempted child molestation in the first degree. D.K. appeals.

DISCUSSION

I. Applicable Law

D.K. claims that the trial court violated his Sixth Amendment right to confrontation by allowing remote testimony. The confrontation clause of the Sixth Amendment states, "In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." U.S. CONST. amend. VI. This amendment applies to state prosecutions under the due process clause of the Fourteenth Amendment. State v. Sweidan, 13 Wn. App. 2d 53, 62, 461 P.3d 378 (2020). The confrontation clause guarantees a defendant a face-to-face meeting with witnesses during trial, although this right is not absolute. Maryland v. Craig, 497 U.S. 836, 844, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990).

"The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Id. at 845. The right guaranteed by the confrontation clause ensures the witness will give statements under oath, forces the witness to be cross-examined, and permits the jury, or fact finder, to observe the witness giving its statement. Id.

Two Supreme Court cases have explored the limitations of the confrontation clause: Craig, and Crawford v. Washington, 541 U.S. 36, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Craig examined the constitutionality of one-way video testimony in child abuse cases. Craig, 497 U.S. at 854-56. The court held that

4

video testimony was necessary for children to testify, when those children would be traumatized by seeing the defendant in court. Id. at 856-57. According to the Court, "[The] State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." Id. at 837. In Crawford, the court prohibited tape-recorded statements offered as evidence under a hearsay analysis, and held that the inability to cross-examine the witness violated the Sixth Amendment. 541 U.S. at 40, 68-69.

D.K. argues that because of the decision in Crawford, Craig must be read narrowly, allowing video testimony in cases only where children would suffer trauma from seeing the defendant. He argues that Crawford limits exceptions to the confrontation clause to those established at the time the Constitution was founded. Under this interpretation, the exceptions occur only when the witness is unavailable and the defendant had a prior opportunity to cross-examine. If that were true, Craig would not have been constitutionally correct and should have been overruled by Crawford.

However, Crawford did not purport to overrule Craig. The United States Supreme Court "does not normally overturn, or so dramatically limit, earlier authority sub silentio." Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 18, 120 S. Ct. 1084, 146 L. Ed. 2d 1 (2000). Rather than reject Craig, Crawford mentions that opinion only once to support that cross-examination is "not an empty procedure." Crawford, 541 U.S. at 74 (Rehnquist, J., concurring). Because Crawford did not explicitly overrule Craig, the two cases must be

5

reconciled. Additionally, Washington cases have followed <u>Craig</u> since <u>Crawford</u> has been decided.[1] <u>See</u> <u>Sweidan</u>, 13 Wn. App. 2d at 63. Here, because <u>Craig</u> refers to live, remote, video testimony, we apply the rule in <u>Craig</u>.

II.    <u>Confrontation Clause</u>

For the court to allow a confrontation of witnesses to occur via video, there must be a finding that the substitute procedure (1) necessarily furthers an important public policy and (2) is reliable. <u>Craig</u>, 497 U.S. at 850; <u>State v. Foster</u>, 135 Wn.2d 441, 457, 957 P.2d 712 (1998). A confrontation clause challenge is reviewed de novo. <u>State v. Koslowski</u>, 166 Wn.2d 409, 417, 209 P.3d 479 (2009). D.K. argues that neither element of the <u>Craig</u> test has been met.

A. <u>Necessity</u>

First, D.K. argues that the State failed to show that S.W.'s video testimony was necessary. The necessity analysis initially focused on child witnesses that would be traumatized by the presence of the defendant while testifying. <u>Craig</u>, 497 U.S. at 856. In <u>Craig</u>, the Court analyzed a Maryland statute that as a matter of public policy allowed video testimony upon a determination that a child who suffered emotional distress so much that they could not reasonably communicate during testimony. <u>Id.</u> at 840-41, 856. In addition to the court finding necessity for

---

[1] The vast majority of courts outside of Washington agree that <u>Crawford</u> did not overrule or limit the holding in <u>Craig</u>. <u>State v. Tate</u>, 969 N.W.2d 378, 385 n.8 (Minn. Ct. App. Jan. 3, 2022). D.K. argues that we should follow an approach taken by the Supreme Court of Michigan in <u>People v. Jemison</u>, 505 Mich. 352, 952 N.W.2d 394 (2020). However, <u>Jemison</u> concedes that <u>Crawford</u> did not overrule <u>Craig</u>, and that case-specific necessity can allow for video testimony. <u>Jemison</u>, 505 Mich. at 365.

the video testimony, the witness must testify under oath, be subjected to full cross-examination, and must be in view of the fact-finders while doing so. Id. at 857.

Washington courts have applied a necessity analysis for the same issue using RCW 9A.44.150(1), which had substantially similar language as the Maryland statute. Foster, 135 Wn.2d at 469 (plurality opinion). In Foster, the court held that RCW 9A.44.150(1) was constitutional in allowing one-way video testimony, and therefore did not violate the confrontation clause. Id. at 469-70.

Unlike Foster, this case involves two-way video testimony and the state did not rely on RCW 9A.44.150(1) for its finding of necessity. Washington has already noted that allowing video testimony upon a finding of necessity is not limited to cases of child abuse. Sweidan, 13 Wn. App. 2d at 71. In Sweidan, the court stated "we conclude that the important policy of alleviating physical pain and suffering can extend to the circumstances when the witness would attend to another's needs resulting from such suffering." Id.

Here, the trial court found that allowing S.W. and S.M. to testify remotely was necessary. To determine this, the court looked to three factors: (1) the severity of the COVID-19 epidemic and precautions being taken at trial; (2) the risk to the particular person; and (3) if a presumption of in-person testimony had been overcome. For the first factor, the court noted that the court is being very careful, that the vaccination rate at the time was low, and that a new variant to COVID-19 was becoming more prevalent. The court then looked to S.W.'s and S.M.'s risk, finding that respiratory disease and lack of vaccine creates a high-risk category. Third, the court found that the presumption for in-person testimony had been

7

overcome, as S.W. would not qualify for a vaccine in the near future, and the case is too old to continue.

The court looked to the Supreme Court of Washington order regarding court operations as evidence of an important public policy. The order states that courts should continue remote proceedings "for public health and safety whenever appropriate." In re Statewide Response, No. 25700-B-658 at 3. The order granted the court authority to conduct nonjury trials remotely, and that juvenile offender matters can be conducted by video when appropriate. Id. 6-7. The Washington Supreme Court's order established a public policy allowing for remote proceedings for health and safety during COVID-19. The trial court concluded that there was a public policy reason that S.W. and S.M. should be allowed to testify remotely. We agree.

However, that is not the end of the analysis. The trial court in Sweidan found an important policy reason to allow video testimony, but it failed to make a clear finding about necessity.[2] Sweidan, 13 Wn. App. 2d at 71-72. D.K. urges the court to follow the analysis in Sweidan to determine that S.W.'s video testimony was not necessary.[3] He argues that Sweidan holds that necessity needs to show

_____

[2] Sweidan would have remanded for an evidentiary hearing on the necessity of the videoconference testimony, but found the constitutional error to be harmless. Sweidan, 13 Wn. App. 2d at 56, 72.

[3] D.K. also argues that "the record was bereft of data about COVID-19 spread in the community." He also argues that there was no evidence about whether the courtroom was well-ventilated, whether spectators could have been kept out, or whether everyone could have been required to obtain a COVID-19 test. He also argues that the court did not evaluate whether a video deposition would be feasible. These arguments go to minimizing the risk to the witnesses. They were not explicitly raised with the trial court, though we can reasonably expect the trial court was aware of these factors. Given the medical information

8

that "other alternatives that would preserve traditional confrontation had not been ruled out."

Sweidan relied in part on United States v. Carter, 907 F.3d 1199, 1208 (9th Cir. 2018). Sweidan, 13 Wn. App. 2d at 73. In Carter, the court found there was no necessity for video testimony when a pregnant woman could not travel to the courtroom to testify, because her disability was temporary, and the case could be continued. Id. Additionally, in Carter, the witness could have been deposed while allowing in-person confrontation. Id. at 1209.

However, D.K. moved to compel in-person pretrial interviews. The trial court denied the motion, and stated that "medical best practice" would be to not expose S.W. to any member of the public. The trial court broadly considered alternatives for out-of-court deposition, such as counsel interviewing S.W. and S.M. at their house. However, that alternative might have decreased the risks to the witnesses, but it would not have eliminated them. The safety concerns expressed by the court would have been equally applicable. The gravity of the risk militates against the alternative, and the result would have been the same. Additionally, regarding continuation, the trial court stated that "this case is getting too old just to let us kick it around for another year." The trial court considered reasonable alternatives. D.K. has not shown that S.W.'s and S.M.'s remote testimony was unnecessary.

---

about the witnesses, the analysis and conclusion reached would be no different than that for the option of a video deposition.

No. 82596-8-I/10

B. Reliability

D.K. argues that the video testimony is not reliable, because the virtual testimony in this case had issues with the sound, and did not show D.K. on the screen during S.W.'s testimony on direct. .

Under Craig, reliability requires that video testimony of witnesses occur under oath, within view of the fact-finders, and with opportunity for cross-examination. Craig, 497 U.S. at 857. Here, both S.W. and S.M. were under oath, cross-examined, and viewed by the judge during the bench trial.

A condition of allowing video testimony is that the witness was able to be viewed by the defendant and the fact-finders of the court during testimony. Id. In both Craig and Foster, the courts allowed one-way video where the witness could not see the defendant. Craig, 497 U.S. at 840-41; Foster, 135 Wn.2d at 446. D.K. does not argue that he or the finder of fact was not able to observe S.W. while she testified.

D.K. argues that S.W. could not view him during her testimony on direct. This is not one of the factors courts look to when doing a reliability analysis.[4] In

---

[4] To the extent the witness could not see D.K., the record indicates that the camera had shifted in some way so that D.K. was out of frame. He does not argue the State or the court was responsible for the movement. The issue was fixed prior to cross-examination of the witness.

D.K. also argues that there were problems with the audio during trial. He cites to one section of the report of proceedings, where the judge says to S.W., "You cut out just right at the end. You said, that's why he stopped staying there with you guys." S.W. replied, "Yeah." However, D.K. cites to no authority that states an error of this type is unreliable. Under RAP 10.3(a)(6), the argument must have citations to legal authority, and a contention without authority need not be considered on appeal. Rhinehart v. Seattle Times, 59 Wn. App. 332, 336, 798 P.2d 1155 (1990). We do not review this issue.

10

<u>Sweidan</u> this court stated, "The record should confirm that the jury and the defendant see the witness and the witness's body language, and that they hear the witness. The record should also verify that the witness sees the jury and the defendant." <u>Sweidan</u>, 13 Wn. App. 2d at 75. "We do not hold, however, that any of these suggestions must necessarily be followed to fulfill the strictures of the confrontation clause." <u>Id.</u>

Therefore, D.K.'s argument fails to establish that S.W.'s and S.M.'s video testimony was unreliable for the purposes of the confrontation clause.

We affirm.

_Appelwick, J._

WE CONCUR:

_Brennan, J_      _Mann, C.J._

11